IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00098-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    SHIRLEY KOCH,

    Defendant.

---

## PLEA AGREEMENT

The United States of America (the government), by and through Jeremy Chaffin and Tim Neff, Assistant United States Attorneys for the District of Colorado, and the defendant, Shirley Koch, personally and by counsel, Martha H. Eskesen and Thomas E. Goodreid, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant. This Plea Agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).

### I.    AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to:

(1)    plead guilty to Count 3 of the Indictment charging mail fraud and aiding and abetting in violation of Title 18, United States Code, Sections 1341 and Section 2;



(2)     not contest the application of the United States Sentencing Guidelines ("USSG") adjustments as set forth in the Advisory Guideline Calculation section below;

(3)     forgo any motion or request for departure or variance outside the advisory guideline range for a total offense level of 26 and a criminal history category of I as calculated by the parties in the Advisory Guideline Calculation section below;

(4)     waive certain appellate and collateral attack rights, as set forth in the Defendant's Waiver of Appeal section below;

(5)     be liable for restitution to the victims in an amount to be determined at sentencing, which could include joint and several liability for some or all of the amount with her co-defendant;

(6)     agree not to contest forfeiture, as set forth in the Forfeiture section below; and

(7)     comply with any other obligations as disclosed to the Court.

## B. Government's Obligations:

The government agrees to:

(1)     move to dismiss the remaining counts in the Indictment with prejudice, against this defendant only;

(2)     not to contest the USSG calculation set forth in the Advisory Guideline Calculation section below, and not pursue additional USSG adjustments beyond those set forth in that calculation;

(3) recommend a sentence within the advisory guideline range for a total offense level of 26 and a criminal history category of I as calculated by the parties in the Advisory Guideline Calculation section below;

(4) recommend that the defendant receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b), provided that the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case.

(5) forgo any motion or request for departure or variance outside the advisory guideline range for a total offense level of 26 and a criminal history category of I as calculated by the parties in the Advisory Guideline Calculation section below;

Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

    (1)    the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 1341;

    (2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of **26**; or

    (3)    the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

    (1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

    (2)    the defendant was deprived of the effective assistance of counsel; or

    (3)    the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by

the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Restitution:**

The defendant acknowledges that in addition to any other penalty authorized by law, the Court may order the defendant to make restitution to any victim in this matter, or if the victim is deceased, to a victim's estate. 18 U.S.C. § 3663(a)(1)(A). The defendant agrees that restitution shall be ordered in an amount to be determined by the Court at sentencing. In advance of the sentencing hearing, the parties intend to confer and endeavor to reach an agreement as to the amount of restitution.

The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw her guilty plea. The defendant also understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. The defendant agrees that any restitution imposed will be

non-dischargeable in any bankruptcy proceeding and the defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

**E. Forfeiture:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere in which the defendant has an interest.  The assets to be forfeited specifically include, but are not limited to:

1. A money judgment in the amount of proceeds obtained by the scheme and by the defendant;
2. 2108 Devon Street, Montrose, Colorado 81401, more specifically identified as ENGLISH GARDENS ADDN NO 3 Block: 3 Lot: 7 S: 35 T: 49 R: 9;
3. 165 Merchant Drive, Montrose, Colorado 81401, more specifically identified as COURT PARK FILING NO 2 Lot: 4 S: 20 T: 49 R: 9; and
4. 2011 GMC Yukon, VIN: 1GKS2MEF7BR255058.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send

notice in non-judicial civil forfeiture matters.  Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames.  The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met.  The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.    ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of mail fraud in violation of Title 18, United States Code, Section 1341 are as follows:

### Count Three:  18 U.S.C. § 1341

*First:* the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

*Second:* the defendant acted with specific intent to defraud;

*Third:* the defendant mailed something or caused another person to mail something through a private or commercial interstate carrier for the purpose of carrying out the scheme;

*Fourth:* the scheme employed false or fraudulent pretenses, representations, or promises that were material.

### III.   STATUTORY MAXIMUM SENTENCE

The maximum statutory penalty for a violation of 18 U.S.C. § 1341 (Count 3 of the Indictment) is: not more than 20 years imprisonment; not more than $250,000 fine,[1] or both; not more than 3 years supervised release; $ 100 special assessment fee; plus restitution in an amount to be determined by the Court at sentencing.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

---

[1] The parties acknowledge that pursuant to Title 18, United States Code, 3571(d), the Court could also impose an alternative fine of the greater of twice the gross gain or twice the gross loss.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision. The parties agree as follows:

### BACKGROUND

Sunset Mesa Funeral Foundation, Inc. ("SMFF"), was a nonprofit corporation incorporated in the State of Colorado. SMFF was purportedly "organized exclusively for charitable, religious, educational and scientific purposes" and its purpose was purportedly to "provide assistance to community members who have no resources for funeral/cremation services." SMFF was formed by defendant MEGAN HESS ("HESS") on or about May 4, 2009.

On or about May 28, 2009, defendant HESS created a Trade Name for SMFF known as Donor Services. Donor Services' primary source of income was recovering and marketing for sale purportedly donated human remains, such as heads, torsos,

arms, legs, or entire human bodies, to customers who used the remains for scientific, medical, or educational purposes (hereinafter referred to as "body broker services"). Defendant HESS operated her body broker services business under the name Donor Services out of the same location as the funeral business operating under the name Sunset Mesa Funeral Directors in Montrose, Colorado.

On or about September 14, 2011, defendant HESS purchased SMFD on behalf of SMFF. The following day, defendant HESS registered the trade name "Sunset Mesa Funeral Directors" (hereinafter "SMFD") for SMFF. From that date, and continuing until February 6, 2018, defendant HESS owned and operated a funeral home providing burial and cremation services under the SMFD name.

Defendant HESS was in charge of, and handled most aspects of, SMFD and Donor Services. In particular, defendant HESS met with families seeking funeral services from SMFD, discussed the disposition of the deceased, and made funeral arrangements. With regard to Donor Services, defendant HESS handled most of the advertisement, invoicing, and shipping arrangements, and dealt directly with the end-users or purchasers of donated and purportedly "donated" human remains.

Defendant SHIRLEY KOCH ("KOCH") assisted defendant HESS in many of these aspects related to the operation of SMFD and Donor Services. Defendant KOCH was involved in meeting with families to discuss the disposition of deceased individuals, and processing and preparing bodies for body broker services.

Beginning in or about 2010, and continuing to on or about February 6, 2018, in the State and District of Colorado and elsewhere defendant HESS devised and

intended to devise a scheme and artifice to defraud and to obtain money and property from decedents and their families or representatives, and other customers by means of materially false and fraudulent pretenses, representations, and promises (hereinafter "the scheme). Defendant KOCH aided and abetted the same during a portion of this time.

It was part of the scheme that:

a. Often defendant HESS, and on occasion defendant KOCH, would meet with families seeking cremation services for their loved ones who had died. During these meetings, defendants HESS and defendant KOCH represented to the families, as the families had requested, that SMFD would cremate the decedents and provide their cremated remains (hereinafter "cremains") back to the families.

b. In many instances, defendant HESS and defendant KOCH neither discussed nor obtained authorization for donation of decedents' bodies or body parts for body broker services. In other instances, the topic of donation was raised by defendant HESS or defendant KOCH, and specifically rejected by the families. In such circumstances, despite lacking any authorization whatsoever, defendant HESS and defendant KOCH recovered body parts from, or otherwise prepared entire bodies of, hundreds of decedents for body broker services.

c. Some families agreed to donation. Frequently these

families believed, based on representations from defendant HESS or defendant KOCH, that only small samples, such as tumors or portions of skin, would be taken for testing or research.  Other families believed, based on representations from defendant HESS or defendant KOCH, that donated remains would be used to treat living recipients.  Still others only authorized donation of specific body parts, such as specific organs, but specifically denied donation for anything else.  Frequently, in such circumstances, defendant HESS and defendant KOCH exceeded the authorization they obtained.  Remains would be sold for purposes not contemplated by the families; and body parts beyond those which were authorized, if not entire bodies, would be sold.  In each of these instances, the families would not have authorized donation had they been informed of what would actually be done with their loved one's remains.

    d.    Defendant HESS advertised the remains offered by Donor Services to customers of her body broker services business as legitimately and freely donated when this often was not the case.  To support such claims, defendant HESS developed "Donor Authorization" forms that purportedly would be signed by the families of decedents when authorizing donation.  In some instances, records maintained by defendant HESS and defendant KOCH for Donor Services and SMFD contained "Donor Authorization" forms that had

signatures indicating a donation was authorized when that had never occurred. In other instances, the records maintained by defendant HESS and defendant KOCH contained no "Donor Authorization" form at all, yet the decedents' remains were nevertheless sold through Donor Services. All the customers of Donor Services relied on defendant HESS's representations that the remains they purchased were legitimately donated. These customers would not have purchased the remains defendant HESS sold had they known that the remains were not, in fact, donated and had instead been stolen.

  e. Many of the customers of Donor Services also required that the remains they received be free of particular infectious diseases, namely HIV and Hepatitis. Defendant KOCH would frequently draw blood from decedents whose remains were to be sold and submit that blood for testing. In several instances, Donor Services received results indicating the remains tested positive for these diseases. Rather than inform Donor Services' customers of this fact, defendant HESS frequently sent these customers altered laboratory reports indicating the remains tested negative for the infectious diseases. Those customers relied on these representations and would not have purchased the remains had they known that the remains were infected with these diseases.

  f. To fraudulently increase Donor Services' profits, defendant

HESS and defendant KOCH shipped, or caused to be shipped through the mails and on commercial air flights in violation of Department of Transportation Regulations, human remains from decedents who tested positive for, or died from, infectious diseases.

    g.    Donor Services received hundreds of thousands of dollars for human remains sold through Donor Services that were either fraudulently obtained and represented as freely donated or were otherwise fraudulently represented as free of infectious diseases when that was not the case.

### **CONDUCT RELATED TO COUNT 3 OF THE INDICTMENT**

On or about January 17-19, 2017, for the purposes of executing the scheme, defendant KOCH, at the direction of defendant HESS, deposited and caused to be deposited to be sent and delivered by a private and commercial interstate carrier, and knowingly caused to be delivered by a private and commercial interstate carrier according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, a shipment containing the fraudulently obtained remains of R.E., R.R., J.L., G.M., L.C., L.L., E.H., S.H., and the fraudulently obtained and infected remains of R.M.

As to decedents R.E., R.R., J.L., G.M., L.L., E.H., and S.H, defendant KOCH did not interact with either the decedents or their families. There were no donor authorization forms for these decedents in the SMFD and Donor

Services files. Despite this, defendant KOCH performed recoveries on the bodies of each of these decedents to be included in the shipment. Some of these body parts were still in possession of the victim that purchased these body parts. DNA testing on the collected body parts confirmed they came from the decedents.

As to decedent L.C., her SMFD file contained a "Cremation Authorization Following Donation" form that purportedly was signed by L.C.'s mother, as well as a photocopy of the mother's driver's license. The file also contained an unsigned and uncompleted donor authorization form. A review of the Donor Services files show that defendant KOCH recovered L.C.'s spine and both of her legs from the knee to the toe tip and included them in the shipment. Defendant KOCH also delivered cremains to her family. Defendant KOCH had no other interactions with L.C.'s family.

As to decedent R.M., prior to his death in June 2016, R.M.'s wife called SMFD and spoke with defendant KOCH. Defendant Koch told R.M.'s wife that even though he had cancer, they could still donate joint tissue after his death. Defendant KOCH claimed the tissue would be transplanted to another person. Defendant KOCH also offered R.M.'s wife a discount on funeral services if they agreed to donation. R.M.'s wife authorized donation of joint tissue and tissue to study the cancer that her husband was dying from.

The SMFD files for R.M. contained a donor authorization form. In obtaining the authorization, Defendant KOCH falsely represented that Donor Services would take tissue for transplantation in living donors when she knew that was untrue. R.M.'s wife

would not have authorized donation had she been informed that the defendants would profit from the sale of her husband's body parts.

A review of Donor Services files show that defendant KOCH recovered not only joint tissue and tissue for cancer research. Rather, records show that defendant KOCH recovered R.M.'s head, spine, and both legs from the knee to the toe tip and included them in the shipment. R.M.'s spine was still in the possession of the customer who purchased the body parts.

Finally, the Donor Services file for R.M. contained a laboratory report that purported to indicate that R.M. tested negative for infectious diseases. That report was submitted to the victim that purchased the body parts. However, the report submitted to the victim was a forgery. Records obtained directly from the laboratory showed that the lab issued a report to Donor Services stating that testing of R.M.'s blood showed the presence of Hepatitis C. The true results of the blood testing were never shared with the victim that purchased R.M.'s remains.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth their agreed upon advisory guideline range called for by the United States Sentencing Guidelines. The 2021 Guidelines Manual, incorporating all guideline amendments, was

used to determine the defendant's offense level.  USSG §1B1.11.

    A.    The base guideline is USSG § 2B1.1, with a base offense level of 7. USSG § 2B1.1(a)(1).

    B.    <u>Specific Offense Characteristics</u>

        1.    There is a 12-level increase because the loss resulting from the defendant's conduct was more than $250,000.  USSG § 2B1.1(b)(1)(G).

        2.    There is a 2-level increase because there are 10 or more victims involved.  USSG § 2B1.1(b)(2)(A)(i).

        3.    There is a 2-level increase because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization.  USSG § 2B1.1(b)(9)(A).

        4.    There is a 2-level increase because the offense involved the conscious or reckless risk of serious bodily injury.  USSG § 2B1.1(b)(16)(A).

    C.    <u>Chapter 3 Adjustments</u>

        1.    There is a 2-level increase because the defendant knew or should have known that a victim of the offense was a vulnerable victim. USSG § 3A1.1(b)(1).

        2.    There is a 2-level increase because the defendant abused a position of private trust in a manner that significantly facilitated the

        commission of the offense.  USSG § 3B1.3.

3.     There is a 3-level decrease based on the defendant's acceptance of responsibility.  USSG § 3E1.1(a), (b).

D.     The resulting Total Adjusted Offense Level is **26**.

E.     The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be **I**.

F.     The career offender/criminal livelihood/armed career criminal adjustments would not apply.

G.     The advisory guideline range resulting from these calculations is **63 to 78 months**.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level set forth above could conceivably result in a range from 63 months (bottom of Category I) to 150 months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.  The parties also acknowledge that the range calculated by the parties in this section controls their respective obligations as set forth in the Agreement section above.

H.     Pursuant to guideline § 5E1.2, the fine range for this offense would be

$25,000 to $250,000, plus applicable interest and penalties.

I. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term would be at least one year but no more than three years.

J. The defendant's sentence will include an order of restitution in an amount to be determined by the Court at sentencing.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 6-21-22

SHIRLEY KOCH
Defendant

Date: 6-21-22

MARTHA H. ESKESEN
Attorney for Defendant

Date: 7-5-22

THOMAS E. GOODREID
Attorney for Defendant

Date: 7-12-22

JEREMY CHAFFIN
Assistant U.S. Attorney

Date: _____

TIM NEFF
Assistant U.S. Attorney

Page 20 of 20