1

1               UNITED STATES DISTRICT COURT
                   DISTRICT OF COLORADO
2

3    UNITED STATES OF AMERICA,     .  Case No. 20-cr-00098-CMA-GPG
                                   .
4              Plaintiff,          .
                                   .
5    vs.                           .
                                   .  Wayne Aspinall US Courthouse
6    MEGAN HESS and SHIRLEY KOCH,  .  400 Rood Avenue
                                   .  Grand Junction, CO  81501
7              Defendants.         .
                                   .  July 5, 2022
8    . . . . . . . . . . . . . . . .  10:39 a.m.

9

10        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
          GORDON P. GALLAGHER, UNITED STATES MAGISTRATE JUDGE

11

     APPEARANCES:
12

13   For the Plaintiff:          U.S. Attorney's Office
                                   Grand Junction
                                 By:  Jeremy Chaffin
14                               205 North 4th Street
                                 Suite 400
15                               Grand Junction, CO  81501
                                 (970) 257-7113
16

17   For the Defendants:         Daniel R. Shaffer, P.C.
                                 By:  Daniel R. Shaffer
                                 405 Ridges Boulevard
18                               Suite B
                                 Grand Junction, CO  81507
19                               (970) 243-2552

20                               AP Law, Ltd.
                                 By:  Ashley Petrey
21                               405 Ridges Boulevard
                                 Suite B
22                               Grand Junction, CO  81507
                                 (970) 812-5234
23

     Also Present:               Charlotte Cruz-Schendel
24                               Danielle McCarthy
                                 Debra Schum
25

```
 1   Appearances Continued:

 2   Court Recorder:              Clerk's Office
                                  U.S. District Court
 3                                400 Rood Avenue
                                  Grand Junction, CO  81501
 4
     Transcription Service:       AB Litigation Services
 5                                216 16th Street, Suite 600
                                  Denver, CO  80202
 6                                (303) 296-0017

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1                      (Time noted:  10:39 a.m.)

2              THE COURT:  Thanks very much.

3              Okay.  Good morning, everybody.  We are here today

4    in the United States versus Megan Hess.  And let me talk a

5    little bit about what we're going to be doing today, as I

6    suspect many of you are new to this situation.  Today is for

7    what's called a "change of plea".  In federal court

8    individuals, when they are indicted enter almost always, if

9    not always, a not guilty plea at the beginning of their case,

10   and as the case proceeds they either later determine whether

11   they're going to trial or whether they're going to accept a

12   plea agreement.  Here, the indication that I've received in

13   writing is that this matter is going to proceed to a plea

14   agreement and I'm going to spend some time talking about that

15   here in a little bit.

16             I also understand that there are a number of

17   individuals who want to address the Court.  With regard to

18   that let me be clear what we are here for and what we are not

19   here for.  What we are not here for, and I'll start with

20   that, is the sentencing.  That would occur if the plea is

21   changed today and if it is accepted by the Court that will

22   occur a number of months from now in front of a district

23   court judge.  I'm a magistrate judge, not a district court

24   judge, and that's important because I don't have the power to

25   sentence individuals in felony cases, so that will occur at a

1    later point in time, presumably in front of Judge Arguello,

2    who will accept the sentencing in this matter, not in front

3    of me.

4            My role is to take the change of plea.  As many of

5    you will probably note, it is an extensive period of time

6    that we go through this, and that's for good reason and

7    that's important, and that's because that protects both the

8    defendant and the process.  In terms of the protection of the

9    defendant part of it, it's important that individuals know

10   what their rights are and they know what they are getting

11   into by accepting an agreement or a bargain.

12           On the other side of it, it's important to the

13   process and that's because if it isn't done right, then cases

14   can be sent back to the district court, either for trial or a

15   change of plea, sometimes months or years later, by the

16   circuit court.  So it has to be done right at this time.  So

17   you'll note that the change of plea that I'm going to go

18   through is very extensive for exactly that reason, to ensure

19   that there's later no question about what somebody wants to

20   do or not do.

21           At this point in time, as we all know, Ms. Hess is

22   presumed innocent and that presumption remains with her until

23   she chooses to accept a plea at the end of this hearing, if

24   that's in fact what occurs.  It is sometimes the circumstance

25   that individuals choose not to go through with a plea and

1   that's why we have this hearing.  That's not common, but it

2   certainly happens.

3            I also understand that this case has raised, for

4   good reason, a significant amount of emotion, and for that

5   reason I'll just preface it by saying nobody's going to be

6   allowed to film or video anything here.  I appreciate that

7   everybody on the video has muted themselves.

8            And in terms of discussing the plea, I understand

9   that there are three individuals who want to address me.  The

10  purpose of addressing me today is going to be basically to

11  tell me what you think about the plea or not.  One of the

12  decisions that I have to make is whether the agreement is

13  conscionable and you'll be able to tell me what you think

14  about that.  What I'll do is discuss that after I've gone

15  through what the plea is, because that sets the parameters of

16  what the discussion is going to be.

17            So with that, let me dive into things.

18            I'll note, as I indicated, that Ms. Hess is here

19  out of custody.

20            Ms. Hess, as we're going through this discussion

21  this morning at any time if you want to speak with your

22  attorneys, either privately or openly, all you have to do is

23  let me know and we'll make arrangements.  That can be one

24  time, or many times.

25            And let me start off by talking about the

1    indictment that was filed in this matter.  The indictment was

2    filed back on March the 12th of 2020.  That is at Document

3    Number 1.  The information sheet with regard to that

4    indictment indicates the following:

5            It indicates, Ms. Hess, that you were indicted by

6    the grand jury for a number of counts.  Those include --

7    sorry, my computer's moving a little bit slow today.

8            Those includes Count 1 through 6 for mail fraud

9    and aiding and abetting, and Counts 7 through 9 for

10   transportation of hazardous materials and aiding and

11   abetting.

12           I'll move on to note that on March the 17th of

13   2020, you entered a not guilty plea that is encapsulated at

14   entry number 15;

15           On March the 23rd of 2020, consent was filed to my

16   jurisdiction as a magistrate judge to handle this portion of

17   the matter.  I've reviewed that consent and that consent was

18   unanimous;

19           On March the 24th of 2020 at entry number 43 the

20   first of two orders of reference to my jurisdiction were

21   entered.  That one was by then presiding Judge Marcia

22   Krieger;

23           On June the 10th of 2022, there is a document that

24   was filed that is entitled notice of disposition informing me

25   that you wanted to change your plea in this matter;

1          And then again, on June the 13th of 2022, another

2    order of reference was filed in this matter by now presiding

3    Judge Arguello referring this matter to me on that basis, as

4    she is now the presiding judge.

5          All right.  What I'm going to do at this point,

6    Ms. Hess, is ask you to stand up and raise your right hand.

7          Do you solemnly swear or affirm under penalty of

8    perjury that the testimony you're about to give in this

9    matter now before the Court will be the truth, the whole

10   truth, and nothing but the truth?

11         MS. HESS:  (No audible response)

12       Whereupon,

13                         MEGAN HESS

14       was duly sworn.

15         THE COURT:  All right.  Please have a seat.  The

16   record will reflect that Ms. Hess has now been sworn.

17         The matter is now before the Court for a change of

18   plea on the notice of disposition.  And let me start, then,

19   with talking to you about a couple of the documents that I

20   have in front of me here today.

21         This matter tells me, Ms. Hess, that you plan to

22   plead guilty to Count 1 of the indictment.  That count is

23   lengthy, and I'm going to read it to you almost in total, and

24   I'll reference the parts that I'm not going to go through

25   word by word as I get to those.  This is for Counts 1 through

1  6, but you are pleading guilty to Count 1.

2          I'm looking at the indictment, Document Number 1

3  in this matter, Page 1, and it reads:

4          "Background, Sunset Mesa Funeral Foundation, SMFF,

5  was a nonprofit corporation incorporated in the state of

6  Colorado.  SMFF was purportedly organized exclusively for

7  charitable, religious, educational, and scientific purposes,

8  and its purpose was purportedly to provide assistance to

9  community members who have no resources for funeral cremation

10 services.

11          "SMFF was formed by defendant Megan Hess on or

12 about May the 4th of 2000.  Hess dissolved SMFF on or about

13 February the 7th of 2018.

14          "On or about May the 28th of 2009, Hess created a

15 trade name for SMFFF known as Donor Services.  Donor

16 Services' primary source of income was harvesting and

17 marketing for sale purportedly donated human remains, such as

18 heads and torsos, arms, legs, or entire human bodies."

19          And let me pause for a moment in reading this.  I

20 certainly take no offense if folks want to get up and leave

21 for any portion of this, or turn off their screen for this.

22 It is incumbent upon me to read the entirety of the

23 indictment.  I'm also aware that some portions of this are

24 very explicit, so I have to read those in total.

25          Continuing on.  "The customers who use the remains

1   for scientific, medical, or educational purposes, hereinafter

2   referred to as 'body broker services'.  At all times relevant

3   to this indictment, Hess operated her body broker services

4   business under the name Donor Services, out of the same

5   location as a funeral business operating under the name

6   Sunset Mesa Funeral Directors in Montrose, Colorado.

7           "On or about September the 14th of 2011, Hess

8   purchased SMFD on behalf of SMFF.  The following day, Hess

9   registered the trade name Sunset Mesa Funeral Directors.

10  From that date and continuing until February the 6th of 2018,

11  Hess owned and operated a funeral home providing burial and

12  cremation services under the name SMFD.  Hess was in charge

13  of and handled most aspects of SMFD and Donor Services.  In

14  particular, Hess met" --

15          THE COURT:  For those folks on the video, I need

16  everybody to please mute themselves.  Only because we cannot

17  have that picked up on our audio here if somebody later wants

18  to transcribe this.  Thank you very much.

19          "Hess was in charge of and handled most aspects of

20  SMFD and Donor Services.  In particular, Hess met with

21  families seeking funeral services from SMFD, discussed the

22  disposition of the deceased, and made funeral arrangements.

23          "With regard to Donor Services, Hess handled most

24  of the advertisement, invoicing, and shipping arrangements,

25  and dealt directly with the end users or purchasers that

1  purportedly donated human remains.

2           "Defendant Shirley Koch assisted Hess in many of

3  these aspects related to the operation of SMFD and Donor

4  Services.  Koch was involved in meeting with families to

5  discuss the disposition of deceased individuals in processing

6  and preparing bodies for body broker services."

7           The scheme, Page 3.  "Beginning in or about 2010

8  and continuing to on or about February the 6th, 2018, in the

9  state and District of Colorado and elsewhere, the defendants

10 Hess and Koch, devised, and intended to devise, a scheme and

11 artifice to defraud and to obtain money and property from

12 decedents, their families or representatives, and other

13 customers by means of materially false and fraudulent

14 pretenses, representations, and promises, hereinafter 'the

15 scheme' and aided and abetted at the same.

16          "It was part of that scheme that often Hess, and

17 on occasion Koch, would meet with families seeking cremation

18 services for their loved ones who had died.  During these

19 meetings Hess and Koch represented to the families, as the

20 families had requested, that SMFD would cremate the

21 descendants and provide their cremated remains back to

22 families.

23          "In many instances, Hess and Koch neither

24 discussed nor obtained authorization for donor -- donation of

25 decedent's bodies or body parts for body broker service.  In

1   other instances, the topic of donation was raised by Hess or

2   Kotch and specifically rejected by families.  In such

3   circumstances, despite lacking an authorization -- any

4   authorization whatsoever, Hess and Kotch harvested body parts

5   from, or otherwise prepared entire bodies, of hundreds of

6   decedents for body broker services.

7          "Some families agreed to donation.  Frequently,

8   these families believed, based on representations from Hess

9   and Koch -- or Koch, that only a small sample such as tumors

10  or portions of skin, would be taken for testing or research.

11  Other families believed, based on representations from Hess

12  or Koch, that donated remains would be used to treat living

13  recipients.  Still, others only authorized donation of

14  specific body parts such as specific organs, specifically

15  denied donation --

16      (Audio skips)

17          THE COURT:  -- S.M., C.S., R.S., R.L., E.F., R.E.,

18  S.M. and A.J., and the infected remains of R.D.

19          I'm incorporating by reference mailings two

20  through six.  All of that is in violation of Title 18 United

21  States Code Section 1341 and Title 18 United States Code

22  Section 2.

23          Ms. Hess, that is the indictment in this matter

24  with regard to the count that you would be pleading guilty

25  to.  The plea agreement that I have in front me I'm labeling

1   as Exhibit 1, and I also have another document entitled

2   "statement by defendant in advance of guilty plea," that I'm

3   labeling is Exhibit 2.

4            The plea agreement tells me the following, ma'am.

5   It states that you intend to plead guilty to Count 1 of the

6   indictment charging that violation that I just read to you,

7   and to comply with any other obligations as disclosed to the

8   Court.  In return for that, the government is agreeing to

9   move to dismiss the remaining counts of the indictment with

10  prejudice against you only.  Should the plea be vacated on

11  motion of you, the government may, in its sole discretion,

12  move to reinstate any or all of the counts dismissed pursuant

13  to this agreement and potentially file a superseding

14  indictment.

15           That is the entire plea agreement as I read it.

16           Mr. Chaffin, is that the government's

17  understanding of the entirety of the plea agreement?

18           MR. CHAFFIN:  Yes, Your Honor.

19           THE COURT:  And Mr. Shaffer or Ms. Petrey, is that

20  the defense's entire agreement?

21           MR. SHAFFER:  It is, Judge.

22           THE COURT:  And Ms. Hess, is that what you

23  understand the plea agreement to be?

24           MS. HESS:  Yes.

25           THE COURT:  All right.  I think, Mr. Chaffin, this

1    is probably a good time for (unintelligible) to address the

2    Court.

3              MR. CHAFFIN:  Yes, Your Honor.  The first victim

4    we have is Charlotte Cruz-Schendel.

5              THE COURT:  Okay.  Ms. Cruz-Schendel, if you want

6    to come on up to the podium?  And what I'll do is have you

7    first state your name and then spell it so Ms. Barnes can get

8    that for the record, please.

9              MS. CRUZ-SCHENDEL:  My name is Charlotte Cruz-

10   Schendel, C-H-A-R-L-O-T-T-E, C-R-U-Z, hyphen, S-C-H-E-N-D-E-

11   L.

12             THE COURT:  All right.  Ms. Cruz-Schendel, what

13   would you like to tell me, please?

14             MS. CRUZ-SCHENDEL:  Just that, you know, I was

15   notified by the FBI in 2018 that, you know, my husband was a

16   victim, and since then I've had to work through the trauma

17   that I was -- that I experienced in hearing of what was done

18   to his body.  And I just think it's finally -- we're finally

19   getting to the point where we can, you know, work through our

20   -- our trauma and start to heal.

21             We know it happened.  We were told it's happened.

22   She's now saying she is guilty.  It, you know, pleading

23   guilty to the one plea, and now it's just a time for us to

24   heal and get some justice and get something done.  I feel

25   like we're finally going to come at  -- put this at an end so

1  that we can all move on.

2          THE COURT:  Okay.  Anything else that you'd like

3  to let me know, ma'am?

4          MS. CRUZ-SCHENDEL:  No.

5          THE COURT:  Okay.  Thank you very much.

6          MR. CHAFFIN:  Your Honor, the next person I would

7  like to address the Court is Mrs. Danielle McCarthy.

8          THE COURT:  Okay.  Ms. McCarthy.  And again, I'd

9  ask you to just introduce yourself for the record and spell

10  your name so Ms. Barnes can you get that, please.

11          MS. MCCARTHY:  Danielle McCarthy, D-A-N-I-E-L-L-E,

12  McCarthy, M-C-C-A-R-T-H-Y.

13          THE COURT:  All right.  Thank you, Ms. McCarthy.

14  And what would you like to tell me, ma'am?

15          MS. MCCARTHY:  I'm the wife of David Allen

16  McCarthy, Jr.  I am a gold star spouse.  This was done to a

17  veteran who served during wartime and was vilely, dastardly,

18  and despicably cut up and shipped, and it was done at the

19  most sacred and vulnerable time of a person and family's

20  life.  That is just so unconscionable to me.

21          Five years of justice delayed has permitted

22  justice tonight, denied.  There can be no justice for the

23  atrocities done.  However, today does mark the beginning of

24  the end for those most -- for those most heinous of crimes

25  with this extremely generous plea of guilt from the U.S.

1  government.  Now my work begins to ensure that this never

2  happens again to another family.

3            Thank you for allowing me to address the court.

4            THE COURT:  Okay.  Thank you, Ms. McCarthy.

5            MR. CHAFFIN:  Thank you, Your Honor.  The last

6  individual that would like to address the Court is Ms. Debbie

7  Schum.

8            THE COURT:  Good morning, ma'am.  And again, I'd

9  ask you to state your name and spell that, please, so we can

10 get --

11           MS. SCHUM:  My name is Debra Shum, D-E-B-R-A, S-C-

12 H-U-M.

13           THE COURT:  Thank you, Ms. Schum.

14           MS. SCHUM:  It's been a long time.  This has been

15 strung out for a long time.  I agree with Ms. McCarthy that

16 this is an, in my view, an extremely generous plea agreement

17 considering how many victims there are and how long that this

18 has been going on and how long it has gotten stretched out.

19 And in my opinion, this wasn't just about money, there were a

20 lot of other things going on here.  Ms. Hess and her mother

21 enjoyed toying with people.

22           I was asked if I wanted to send any jewelry or

23 nice outfits along for my friend, Laura, who was actually

24 sold as an entire body.

25           I want to see this move along.  I urge to go ahead

1   and accept this plea deal, even though I do believe that it

2   is overly generous.  I would like to hear Ms. Hess admit what

3   she has done rather than just a jury finding her guilty.  As

4   long as this stipulation is part of it, and that you just

5   read and that she is required to say what she did openly,

6   publicly, I urge you to accept this plea deal.

7              Thank you.

8              THE COURT:  Okay.  Thank you, Ms. Schum.

9              Anybody else right now, Mr. Chaffin, that you know

10  that would like to address the Court?

11             MR. CHAFFIN:  Not that I'm aware of, Your Honor.

12             THE COURT:  Okay.

13             All right.  Ms. Hess, let's turn to talking about

14  the plea agreement here and the rules that we have to discuss

15  for today.  I'll note that the matter is now before the Court

16  for the change of plea, consideration and advisement with

17  regard to the party's proposed plea agreement.  I've

18  indicated I have Exhibits 1 and 2 before me.

19             Ms. Hess, do you understand now that you are under

20  oath, ma'am, and that if you were to answer any of my

21  questions falsely you could be prosecuted separately for

22  perjury or for making a false statement?

23             MS. HESS:  Yes.

24             THE COURT:  Do you also understand that you have

25  the right to remain silent and you do not have to answer any

1    of my questions in this hearing?

2              MS. HESS:  Yes.

3              THE COURT:  Mr. Shaffer, Ms. Hess is a little bit

4    soft-spoken, just so we can make sure we get this on the

5    record, if you don't mind swinging the mic over there?  Thank

6    you.

7        Before I can accept your plea I have to make certain

8    that you understand the charges brought against you, that you

9    understand your choices and the consequences of those

10   choices, that your plea of guilty and your decision to do so

11   is voluntary, and that you have not been pressured into that

12   decision, and that there's a factual basis for your plea.

13   Therefore, before I can accept your plea, I have to ask you a

14   number of questions about the proposed plea agreement and the

15   offenses you're pleading guilty to, and I'll need you to

16   answer those questions.

17             So for purposes of this hearing, do you give up

18   your right to remain silent so that you can answer the

19   questions that I must ask you?

20             MS. HESS:  Yes.

21             THE COURT:  Mr. Shaffer, Ms. Petrey, do you concur

22   in your client's waiver of her right to remain silent for

23   purposes of this hearing?

24             MR. SHAFFER:  Yes, Your Honor.

25             MS. PETREY:  Yes, Your Honor.

1          THE COURT:  Okay.

2          I also want to make sure -- And for you all,

3  certainly one of you can certainly answer as we go forward.

4          MS. PETREY:  Okay.

5          THE COURT:  Because I know that's going to be a

6  continued thing.  It doesn't matter to me who it is, as long

7  as one person wants to answer those questions.

8          I also have to make sure, Ms. Hess, that as you

9  understand that your notice of disposition doesn't bind you

10  to a certain course of action.  In fact, you will not be

11  bound until the conclusion of this hearing when I either

12  accept or don't accept your plea and you can change your mind

13  at any point in time as we go through this hearing.

14           Also, at any time if I tell you or ask you

15  something you do not understand, I have to have you let me

16  know that immediately.  And as I indicated, if you want to

17  speak with your attorney at any point as we go along, you

18  just need to let me know that.

19          Do you understand all of that?

20          MS. HESS:  Yes.

21          THE COURT:  Okay.  Ma'am, what is your true and

22  correct full name?

23          MS. HESS:  Megan Hess.

24          THE COURT:  And how old are you, ma'am?

25          MS. HESS:  45.

1          THE COURT:  And what level of school or education

2    have you completed?

3          MS. HESS:  Twelve plus.

4          THE COURT:  I take it that you can read and write

5    in English?

6          MS. HESS:  Yes.

7          THE COURT:  Are you now under the influence of any

8    medication, drug, narcotic, marijuana, or alcohol?

9          MS. HESS:  No.

10          THE COURT:  Have you taken any of those within the

11    last three days?

12          MS. HESS:  No.

13          THE COURT:  Is there anything that keeps you from

14    understanding what's going on right now in this hearing?

15          MS. HESS:  No.

16          THE COURT:  Have you been treated recently for any

17    mental illness or addiction to drugs of any kind?

18          MS. HESS:  No.

19          THE COURT:  As far as you know, do you suffer from

20    any diagnosed form of mental illness or emotional disability?

21          MS. HESS:  No.

22          THE COURT:  Do you feel that you do understand

23    what's going on right now in this hearing?

24          MS. HESS:  Yes.

25          THE COURT:  Either Mr. Shaffer or Ms. Petrey, have

1  you spoken with your client about these proceedings today

2  from the perspective of competency?

3            MR. SHAFFER:  Yes, Judge.

4            THE COURT:  Do you have any reason to believe that

5  your client should not go forward with this plea today?

6            MR. SHAFFER:  No, Your Honor.

7            THE COURT:  And do you believe her to be in

8  possession of her faculties and competent to proceed?

9            MS. HESS:  Yes, Your Honor.

10           THE COURT:  All right.  Based off the statements

11  of the defendant and her attorney and my observations so far,

12  I find Ms. Hess to be in full possession of her faculties and

13  competent to proceed.

14           The indictment I read to you here a little while

15  ago, the entirety of Count 1, which is also Count 1 through

16  6, and noted that there's Counts 7 through 9, have you read

17  and discussed each of those charges in that indictment with

18  your attorneys?

19           MS. HESS:  Yes.

20           THE COURT:  Did they answer your questions or any

21  questions you had about that to your satisfaction?

22           MS. HESS:  Yes.

23           THE COURT:  Do you believe that you understand

24  each of the charges brought against you in the indictment?

25           MS. HESS:  Yes.

1          THE COURT:  The plea agreement that I read to you

2    here a little bit ago, do you agree with and think that you

3    understand the plea agreement?

4          MS. HESS:  Yes.

5          THE COURT:  I'm assuming at some point you went

6    through that agreement with your attorney or attorneys.  Can

7    you tell me how that process occurred, please?

8          MS. HESS:  I met with my attorneys and they read

9    the -- or they read the statement to me.

10          THE COURT:  Okay.  Did you have an opportunity to

11    read it yourself?

12          MS. HESS:  No.

13          THE COURT:  The plea agreement itself, have you

14    ever read that?

15          MS. HESS:  Oh.  Well, I have a copy of it.

16          THE COURT:  Okay.  Have you ever had an

17    opportunity to read it, or have you read it?

18          MS. HESS:  I haven't read it without Dan, but we

19    did read it together, yes.

20          THE COURT:  Okay.  So you have read it, at least

21    with somebody?

22          MS. HESS:  Yes.  With Mr. Shaffer.

23          THE COURT:  As you went through that, did you have

24    an opportunity to ask Mr. Shaffer any questions that you had

25    about that document?

1           MS. HESS:  I did.

2           THE COURT:  Did he answer those questions to your

3   satisfaction?

4           MS. HESS:  Yes, he did.

5           THE COURT:  All right.  May I rely, Mr. Chaffin,

6   upon the factual basis set forth in the plea agreement,

7   Exhibit 1, at page numbers 3 through and including --

8       (Brief pause)

9           MR. CHAFFIN:  18, Your Honor.

10          THE COURT:  18.  Thank you.  For a factual basis

11  in this matter?

12          MR. CHAFFIN:  Yes, Your Honor.

13          THE COURT:  Mr. Shaffer, from your perspective,

14  may I so rely?

15          MR. SHAFFER:  Yes, Your Honor.

16          THE COURT:  All right.

17          So Ms. Hess, Pages 3 through 18 of this document

18  sets forth a stipulation of facts in this agreement.  By

19  entering into this agreement the government is stating that

20  these are the facts that it could -- it believes it could

21  prove if this matter went to trial, and by entering into this

22  plea you are admitting that these facts are true.  I will

23  treat them as true for purposes of considering your plea, and

24  perhaps even more importantly, the presiding judge will treat

25  them as true for purposes of sentencing you.

1                   Have you had enough time to review the facts that

2     are set forth there, either individually or with your

3     attorney?

4                   MS. HESS:  Yes.

5                   THE COURT:  Would you like any additional time to

6     review those facts?

7                   MS. HESS:  No, thank you.

8                   THE COURT:  Do you agree that the facts set forth

9     on Pages 3 through and including Pages 18 of Exhibit 1 are in

10    fact true?

11                  MS. HESS:  Yes.

12                  THE COURT:  Is there any inaccuracy in those facts

13    that you would like to correct at this time?

14                  MS. HESS:  No.

15                  THE COURT:  Are you pleading guilty, ma'am,

16    because you did each and every one of those things charged in

17    that count of the indictment and set forth in that factual

18    recitation?

19                  MS. HESS:  Yes.

20                  THE COURT:  Are you pleading guilty because you

21    are guilty?

22                  MS. HESS:  Yes.

23                  THE COURT:  What I need you to do is tell me in

24    your own words what you did that makes you guilty of Count 1

25    of the indictment.

1         MS. HESS:  It has been 53 months since this legal

2    travesty began, 53 long months.  Fifty-three months of

3    suffering from my community, the families involved, my

4    family, and my child.  Making the decision to consider a plea

5    was not easy.  The grief sustained will not end, but what can

6    end is this ongoing, unresolved, torturous battle.

7         I come before the Court completely broken and ask

8    for the Court to accept my plea, accepting my ownership and

9    responsibility of making this right.  The journey to

10   resolution for everyone involved begins with today.  This is

11   my responsibility to resolve and I'm here.

12        THE COURT:  Okay.  Now, Ms. Hess, while I

13   appreciate that statement, and you can make, frankly,

14   whatever statement you wish, that does not tell me what you

15   did that makes you guilty of Count 1, and that's something

16   that you have to tell me if you want to proceed with this

17   plea agreement.  It's what it is that you did that makes you

18   guilty of this count.

19        Did you need an opportunity to discuss that with

20   your attorneys before we proceed further in any fashion?

21        MS. HESS:  I'm taking responsibility.  I'm here to

22   accept the plea and that families believe I went above the

23   scope of the consent forms, and so I wish for you to accept

24   my plea.  I'm taking responsibility for what has happened.

25        THE COURT:  Okay.  What I need you to do, ma'am,

1  is tell me how you committed this crime, because that is the,

2  essentially, the level of responsibility that Judge Arguello

3  will be looking at to see in this record when she gets to a

4  sentencing.

5          MS. HESS:  I'm not sure what you're asking me for.

6          THE COURT:  Mr. Shaffer, do you all need a minute?

7          And I'll ask the folks in the gallery, please, to

8  remain silent.  Thank you.

9      (Brief pause)

10          THE COURT:  Mr. Shaffer, are we ready to proceed?

11          MR. SHAFFER:  Yes, Judge.

12          THE COURT:  Okay.  Yeah.

13          Was there an audio issue?

14          THE COURT CLERK:  It's okay now, but

15  (unintelligible).

16          THE COURT:  Okay.  Do you think it's going --

17          THE COURT CLERK:  It's done that twice, but now

18  it's not (unintelligible).

19          THE COURT:  Okay.  Do we need to check with

20  (unintelligible) and make sure they're getting it?  We can

21  certainly -- I can pause for a minute, if that makes sense.

22          THE COURT CLERK:  No.  I just didn't -- I just

23  wanted to make sure, but everything looks appropriate.

24          THE COURT:  Okay.  And if you want to --

25          THE COURT CLERK:  I will let you know if it does

1   it.

2             THE COURT:  Yeah.  I mean, if it makes sense, the

3   same time --

4             THE COURT CLERK:  It's recording, though.

5             THE COURT:  Okay.  All right.

6             All right.  Let me come back to you, Ms. Hess.

7   Sorry, we wanted to make sure our recording was working

8   correctly.

9             The question going back that I need to have you

10  answer for me is, in your own words I need you to tell me

11  what you did with respect to the count you're pleading guilty

12  to that makes you guilty of this count.  You have not told me

13  what you did that makes you guilty of this count at this

14  juncture.

15            MS. HESS:  I'm guilty of Count 1.  I exceeded the

16  scope of the consent and I'm trying to make an effort to make

17  it right.  I'm here to plead guilty to what you've accused me

18  of.  In some cases I've acted inappropriately and --

19            THE COURT:  Okay.  Well, first to be clear, Ms.

20  Hess, I haven't accused you of anything.  That's the

21  government's role, not the judiciary's.  I'm essentially the

22  referee in this role.

23            Mr. Chaffin, I guess we've got an extensive

24  factual basis there.  I think we probably need to have an

25  idea from the government of how in detail level of recitation

1  the government believes is appropriate in this matter before

2  we move forward so we don't spend a lot of time spinning our

3  wheels on this issue.

4          MR. CHAFFIN:  Your Honor, I think it's ultimately

5  up to the Court.  We did lay out an extensive factual detail.

6  I think that what Ms. Hess is probably struggling to admit is

7  that she did not receive consent in a number of cases from a

8  number of families and she exceeded the scope of consent from

9  a number of individuals and she, nevertheless, sold body

10  parts to companies that purchased them believing that they

11  were freely consented.  I think that that is the level of

12  admission that I think would be appropriate traditionally in

13  a hearing like this, Your Honor.

14          THE COURT:  Ms. Hess, reading the stipulation of

15  facts that is set forth in that level of fact, that that is

16  in fact what you did -- so let me ask it this way.  Do you

17  agree that that's the case, that that's what you did?

18          MS. HESS:  Yes.

19          THE COURT:  Do you have any disagreement with the

20  stipulation of facts that you want to set out?

21          MS. HESS:  No.

22          THE COURT:  Is the government satisfied with that,

23  Mr. Chaffin?

24          MR. CHAFFIN:  Yes, Your Honor.

25          THE COURT:  All right.

1              Based off of that, as supplemented by the plea

2    agreement, I find that that is, at least at this point in

3    time, a sufficient level of acceptance.  Although that will

4    get addressed and your attorneys can address with you how

5    that's going to play out with the pre-sentence report

6    investigation if we get to that.

7              All right.  Let me have you look, Ms. Hess, at

8    Pages 21 of the plea agreement, and Page 10 -- I'm sorry,

9    Page 9 of the statement by defendant in advance in Exhibits 1

10   and 2.  Above the name Megan Hess in each of those is a

11   signature.  Is that, in fact, your signature on each of those

12   documents?

13             MS. HESS:  Yes.

14             THE COURT:  When you signed those documents, did

15   you do so voluntarily?

16             MS. HESS:  Yes.

17             THE COURT:  Was one of your attorneys with you

18   when you did so?

19             MS. HESS:  Yes.

20             THE COURT:  Did they answer all of your questions

21   before you did so?

22             MS. HESS:  Yes.

23             THE COURT:  I'll note Counsel's signature from the

24   government and the defense on both of those.

25             Let me turn, Mr. Shaffer, to you.  Did you review

1  both Exhibits 1 and 2 with your client?

2           MR. SHAFFER:  Yes, Judge.

3           THE COURT:  All right.

4           MR. SHAFFER:  We reviewed Exhibit 1 a number of

5  times before actually communicating a signature and filing

6  with the Court.  Back on 6-10-2022, I read all of Exhibit 1

7  to and with Ms. Hess.

8           THE COURT:  Okay.  Did you answer any questions

9  that she might have had about it?

10          MR. SHAFFER:  Yes, Judge.

11          THE COURT:  Probably most importantly, do you

12 believe that she understands the contents of Exhibits 1 and

13 2?

14          MR. SHAFFER:  As much as any pro se, or any person

15 coming before the Court understands --

16          THE COURT:  Sure.

17          MR. SHAFFER:  -- federal procedure and sentencing

18 guidelines, yes, Judge.

19          THE COURT:  Okay.  Thank you, Mr. Shaffer.

20          All right.  What I'm going to do now, Ms. Hess, is

21 go through some of your legal rights with you.  These are set

22 forth primarily in Exhibit 2 and they're going to sound

23 familiar, but I have to make sure individually that you

24 understand these rights.

25          As you sit here right now, you have the following

1   constitutional rights that you would be giving up if you take

2   this plea:

3          You have the right, as you have exercised, to

4   plead not guilty to any offense charged against you.  Because

5   you have entered that not guilty plea, you can maintain that

6   not guilty plea and proceed to a speedy and public trial.

7          You have the right to a trial to a jury of 12

8   persons whose verdict must be unanimous.  At trial, you would

9   be presumed innocent, as you are through all of these

10  proceedings, and the government would have to prove your

11  guilt by proving each element of the charge beyond a

12  reasonable doubt.

13         If both you and the government were to give up

14  your right to a jury trial, you could have a bench trial.

15  That means to the judge.

16         You have the right to competent and effective

17  assistance of an attorney for your defense through all of

18  these proceedings, even if you do not enter a plea of guilty.

19  If you couldn't afford one, one would be appointed to

20  represent you free of charge, as has been done in this case,

21  and that lawyer would assist you at trial and all stages of

22  these proceedings.

23         At trial, you have the right to confront and cross

24  examine witnesses and to challenge any evidence presented

25  against you.  You can have witnesses subpoenaed, that means

1    compelled to come to court.  And if you couldn't afford those

2    subpoenas, the Court would order them at no charge to you.

3              At trial, you can testify or remain silent.  If

4    you choose to remain silent, the Court, at your request,

5    would tell the jury that they could not use that decision

6    against you in any way.  By pleading guilty you are, of

7    course, giving up that right and are incriminating yourself.

8              If you went to trial and were convicted, you'd

9    have the right to appeal your conviction to a higher court.

10   Here, even though you're pleading guilty, you have some

11   appellate rights that have been maintained.

12             Has your attorney discussed all of those rights

13   with you?

14             MS. HESS:  Yes.

15             THE COURT:  Do you believe that you understand

16   that?

17             MS. HESS:  Yes.

18             THE COURT:  Do you understand that by entering

19   into this plea you would be giving up your right to appeal

20   the prosecution conviction and sentence under the terms set

21   forth in the plea agreement?

22             MS. HESS:  Yes.

23             THE COURT:  Do you understand that if your plea is

24   accepted you would be incriminating yourself and would have

25   given up, now and forever, your right to a jury trial and

1    most of those rights that I have just described?

2              MS. HESS:  Yes.

3              THE COURT:  Do you need any more time to speak

4    with your attorneys about those rights or your waiver of

5    those rights?

6              MS. HESS:  No.

7              THE COURT:  Do you, in fact, give up those rights?

8              MS. HESS:  Yes.

9              THE COURT:  Mr. Shaffer, are you satisfied that

10   each of those waivers by your client is knowing, voluntary,

11   and intelligent?

12             MR. SHAFFER:  I am.

13             THE COURT:  And do you concur in those waivers?

14             MR. SHAFFER:  I do.

15             THE COURT:  I want to make sure, Ms. Hess, that

16   you understand that you're not giving up your right to an

17   attorney through the remainder of these proceedings, nor to

18   appeal any sentence that might be imposed.

19             All right.  Let's talk about the charge you intend

20   to plead guilty to and the possible penalties.

21             Mr. Chaffin, if you could please inform Ms. Hess

22   of the charge and the elements?

23             MR. CHAFFIN:  Yes, Your Honor.

24             The elements of mail fraud in violation Title 18

25   the United States Code Section 1341 are as follows:

1          First, the defendant devised, or intended to

2    devise, a scheme to defraud as alleged in the indictment;

3          Second, the defendant acted with specific intent

4    to defraud;

5          Third, the defendant mailed something, or caused

6    another person to mail something, through a private or

7    commercial interstate carrier for the purpose of carrying out

8    the scheme;

9          And fourth, the scheme employed false or

10   fraudulent pretenses, representations, or promises that were

11   material.

12         THE COURT:  Thank you, Mr. Chaffin.

13         Ms. Hess, do you understand the nature of this

14   charge against you?

15         MS. HESS:  Yes.

16         THE COURT:  And do you understand that if this

17   matter went to trial the government would have to prove

18   beyond a reasonable doubt each of those elements of the

19   charge that you're pleading guilty to?

20         MS. HESS:  Yes.

21         THE COURT:  Mr. Chaffin, could you go through the

22   penalties with us, please?

23         MR. CHAFFIN:  Yes, Your Honor.

24         The maximum sentence for violation of Count 1 of

25   the indictment is not more than 20 years of imprisonment, a

1  maximum term of three years of supervised release, a maximum

2  fine of $250,000, or in the alternative the greater of twice

3  the gross gain or twice the gross loss, a $100 mandatory

4  victims' fund assessment fee, and restitution.

5          THE COURT:  Thank you, Mr. Chaffin.

6          Ms. Hess, do you believe that you understand the

7  consequences, or at least the possible consequences, to you

8  of your plea of guilty?

9          MS. HESS:  Yes.

10          THE COURT:  That includes the maximum sentence

11  that could be imposed of 20 years.  Do you understand that,

12  as well?

13          MS. HESS:  Yes.

14          THE COURT:  All right.  Let's have a discussion

15  about the sentencing range.  And for this I'm going to turn

16  to Page 20, Subsection Q as in "queen," of the advisory

17  guideline range calculation.

18          I'll preface that by noting that there is some

19  significant disagreement with regard to calculations and how

20  that calculation occurs, and I'll have a further discussion

21  with you about that later.  But in section Q it is noted that

22  the government calculates the possible guideline range is 151

23  to 188 months, and your attorneys calculate it at 21 to 27

24  months.  There was a further discussion of top range and

25  bottom range that are all set forth and incorporated into

1  that discussion.

2           Mr. Shaffer, have you reviewed with and explained

3  to your client the sentencing computations set forth in the

4  plea agreement?

5           MR. SHAFFER:  I have.  We have.

6           THE COURT:  Okay.  And have you made any promises

7  to her with regard to that sentencing range, or sentencing

8  ranges?

9           MR. SHAFFER:  Only that, I mean, in the disputed

10  areas that we would prepare materials for the Court, of

11  course.

12           THE COURT:  And as you sit here right now, do you

13  think that, at least in your mind, off of your calculations,

14  that that 21 to 27 months is the calculation that at least

15  the defense believes might apply in this case?

16           MR. SHAFFER:  It may apply.

17           THE COURT:  Okay.  Thank you.

18           All right.  So, Ms. Hess, there's a lot of things

19  that you need to know about this sentencing range.

20           First, these are only estimates at this point in

21  time based off of the information that the parties have.  At

22  the end of all of this, a pre-sentence investigation report

23  will be prepared, if that's where this matter proceeds, and

24  that may include additional information.  And at least one of

25  these calculations is inherently not going to be correct

1  because in the pre-sentence investigation report the

2  probation department's going to make their own calculation

3  and it can't agree that both of these are correct, so it's

4  going to come up with a number.  I don't know what that

5  number is going to be, but ultimately there will be a

6  guideline calculation number that is set forth in the pre-

7  sentence report.  There may very well be some dispute about

8  that number after the fact.

9         Essentially the way this is going to work is the

10 probation department is going to prepare that report, is

11 going to make their recommendation, and then, from what I'm

12 seeing so far, it seems extremely likely to me that the

13 litigants are going to, you and the government, are going to

14 have some dispute about that calculation.

15        So do you understand, at least preliminarily, that

16 there will be a calculation and that the attorneys will then

17 litigate whether that calculation is correct or not?

18        MS. HESS:  Yes.

19        THE COURT:  In addition to that calculation, you

20 need to know that in determining your sentence the sentencing

21 judge is obliged by law to impose a sentence efficient but

22 not greater than necessary to promote respect for the law and

23 provide just punishment, to adequately deter criminal

24 conduct, to protect the public from further crimes that you

25 might commit, to provide you with needed educational or

1    vocational training, medical care, or other correctional

2    treatment in the most effective manner.  In order to fashion

3    such a sentence the court that sentences you will consider

4    the nature and circumstances of the offense, your history and

5    characteristics, the type of sentences that might be

6    available, what the federal sentencing guidelines would

7    recommend, the need to avoid unwarranted sentence disparities

8    among defendants with similar records found guilty of similar

9    conduct, and any need for restitution.

10            Ma'am, has your attorney, or attorneys, explained

11   to you the various elements and factors that the sentencing

12   court will consider in determining what sentence is

13   appropriate?

14            MS. HESS:  Yes.

15            THE COURT:  Do you believe that you understand

16   those factors and elements?

17            MS. HESS:  Yes.

18            THE COURT:  Has your attorney, or have your

19   attorneys, explained to you that the federal sentencing

20   guidelines are merely advisory upon the Court?

21            MS. HESS:  Yes.

22            THE COURT:  What that means in practicality is

23   that the pre-sentence report is going to come up with that

24   number.  I don't know what it's going to be, and obviously we

25   have some dispute already about that number, with 151 to 188

1   month range, or a 21 to 27 month range, but a number is

2   ultimately going to be reached.

3            However, that number is merely advisory upon the

4   court, and what that means in reality is that the

5   determination of the sentence imposed is 100 percent up to

6   the judge that sentences you.  She does not have to accept

7   any sentence recommended in the plea agreement or by the

8   government.

9            Do you understand that?

10            MS. HESS:  Yes.

11            THE COURT:  She may ultimately impose a sentence

12   more severe or less severe than the sentence in the

13   guidelines.  Do you understand that?

14            MS. HESS:  Yes.

15            THE COURT:  Ultimately, if you are disappointed

16   either with the sentence imposed or with the advisory

17   guideline range that is ultimately reached, that would not be

18   a basis for you withdrawing your plea of guilty.  Do you

19   understand that?

20            MS. HESS:  Yes.

21            THE COURT:  If you are sent to prison in this

22   matter, when you are released there would be conditions

23   attached to your release.  Some of those conditions would

24   include no new crimes at the state, federal, or local level,

25   no illegal substances, and no firearms.  There may be

1  conditions unique to this type of a case or to your

2  circumstance.

3          Mr. Shaffer, is your client a United States

4  citizen?

5          MR. SHAFFER:  Yes, Your Honor.

6          THE COURT:  Okay.

7          Do you understand, Ms. Hess, that if you were to

8  violate any one or more of any conditions of supervised

9  release that could subject you to being returned to prison

10  for any remaining term of supervised release?

11          MS. HESS:  Yes.

12          THE COURT:  Do you understand that if you are

13  currently on any parole, probation, or supervised release,

14  that plea alone would not be the basis for revocation or that

15  -- I'm sorry, that plea alone could be the basis for

16  revocation of that status and could return you to prison in

17  any other case?

18          MS. HESS:  Yes.

19          THE COURT:  Also, do you understand, ma'am, that

20  you are pleading guilty to a felony offense?

21          MS. HESS:  Yes.

22          THE COURT:  By pleading guilty to a felony that

23  could deprive you, or will deprive you, of certain valuable

24  civil rights.  Those could include the right to vote, to hold

25  public office, to serve on a jury, and will include the right

1    to possess a firearm of any type.  Do you understand that?

2                MS. HESS:  Yes.

3                THE COURT:  Do you understand that parole no

4    longer exists in the federal system and if you are sent to

5    prison you would not be released early on parole.  Your

6    attorney could file a motion -- I'm sorry, the government

7    could file a motion shortly after judgment is entered to

8    reduce the sentence, or you could be successful in an appeal

9    and resentencing, and you may receive up to 54 days a year of

10   good time as a decision of the Bureau of Prisons.

11               Do you understand that there's no other early

12   release for parole that exists?

13               MS. HESS:  Yes.

14               THE COURT:  Has anyone, including your attorney,

15   made any promise, representation, or guarantee to you about

16   the type of sentence that will be imposed, or the length of

17   sentence, to get you to plead guilty?

18               MS. HESS:  No.

19               THE COURT:  Has anyone forced you to plead guilty?

20               MS. HESS:  No.

21               THE COURT:  Has anyone attempted to threaten you,

22   your family, or anyone close to you, to get you to plead

23   guilty?

24               MS. HESS:  No.

25               THE COURT:  Mr. Shaffer, have you reviewed all

1   facts and discovery in this matter as provided by the

2   government?  I'm including, of course, Ms. Petrey's review,

3   if you split that up between the two of you.

4            MR. SHAFFER:  Yeah.

5            THE COURT:  Did you review those facts with your

6   client?

7            MR. SHAFFER:  We've reviewed the pertinent facts

8   of the sentence.

9            THE COURT:  Have you pursued with her any

10  potential defenses that she might have?

11           MR. SHAFFER:  We have.

12           THE COURT:  Have you advised your client about the

13  legality or admissibility of any statements or confessions or

14  other evidence that the government might have against her?

15           MR. SHAFFER:  We have.

16           THE COURT:  To the best of your knowledge, is your

17  client pleading guilty because of an illegally obtained

18  evidence in the possession of the government?

19           MR. SHAFFER:  No, Your Honor.

20           THE COURT:  Ultimately, do you and your client

21  agree that it is in her best interest to enter into this

22  plea?

23           MR. SHAFFER:  We do.

24           THE COURT:  Is it your opinion that your client's

25  entering this plea freely and voluntarily with full knowledge

 1  of the charge and consequences of the plea?

 2           MR. SHAFFER:  It is.

 3           THE COURT:  Other than as set forth in the plea

 4  agreement, have there been any promises, representations, or

 5  guarantees made either to you or to your client?

 6           MR. SHAFFER:  No, Your Honor.

 7           THE COURT:  Other than reviewing this guideline

 8  sentencing information that we discussed, has there been any

 9  promise or indication of a specific sentence that might be

10  imposed by the presiding judge in this matter?

11           MR. SHAFFER:  No, Your Honor.

12           THE COURT:  Do you know of any reason I should not

13  recommend acceptance of the plea of guilty?

14           MR. SHAFFER:  No, Your Honor.

15           THE COURT:  And do you concur in the waiver of a

16  jury trial and entry of a plea?

17           MR. SHAFFER:  We do.

18           THE COURT:  Thank you.

19           Mr. Chaffin, other than as set forth in the plea

20  agreement, has the government made any promises,

21  representations, or guarantees to the defendant or her

22  attorney?

23           MR. CHAFFIN:  No, Your Honor.

24           THE COURT:  Does the government concur and agree

25  with the waiver of a jury trial conditioned upon the matter

1    being resolved in accordance with this plea agreement?

2              MR. CHAFFIN:  Yes, Your Honor.

3              THE COURT:  Thank you.

4              Ms. Hess, are you satisfied with the

5    representation your attorneys have provided to you in this

6    matter?

7              MS. HESS:  Yes.

8              THE COURT:  Have you told them everything they

9    need to know about your case?

10             MS. HESS:  Yes.

11             THE COURT:  Do you believe that they have

12   considered any defenses that you might have to this matter?

13             MS. HESS:  Yes.

14             THE COURT:  Do you believe that they have fully

15   advised you about your case?

16             MS. HESS:  Yes.

17             THE COURT:  Have you had enough time to discuss

18   this case with your attorneys?

19             MS. HESS:  Yes.

20             THE COURT:  Some of your case occurred during the

21   course of, kind of, the worst portion of the coronavirus

22   pandemic that's interrupted different types of communication

23   that folks have had and required electronic or video type

24   communication in some circumstances.  I don't know what

25   occurred in your circumstance, but the question at hand is,

1  has that made it in any way problematic for you so that this

2  plea is in any way less valid than if you had had all of your

3  meetings in person?

4          MS. HESS:  No.

5          THE COURT:  Has anyone told you how to answer my

6  questions here today?

7          MS. HESS:  No.

8          THE COURT:  Have you understood everything I've

9  asked you and told you here today?

10         MS. HESS:  Yes.

11         THE COURT:  Do you believe that you understand the

12 consequences to you of this plea of guilty?

13         MS. HESS:  Yes.

14         THE COURT:  Do you believe that you are competent

15 to make the decision to plead guilty?

16         MS. HESS:  Yes.

17         THE COURT:  Do you know of any reason why I should

18 not recommend acceptance of your plea of guilty?

19         MS. HESS:  No.

20         THE COURT:  Do you understand that if I do

21 recommend acceptance of your plea of guilty all that will be

22 left will be the imposition of sentence which will, or almost

23 certainly will, include imprisonment under the federal

24 sentencing guidelines?

25         MS. HESS:  Yes.

 1              THE COURT:  Having in mind everything that we've

 2  discussed about your plea of guilty, the rights that you

 3  would be giving up, and the maximum sentence of 20 years that

 4  you could receive, do you still want to plead guilty?

 5              MS. HESS:  Yes.

 6              THE COURT:  Are you requesting that I receive,

 7  accept, and approve your plea agreement as set forth in

 8  Exhibit 1?

 9              MS. HESS:  Yes, please.

10              THE COURT:  Mr. Shaffer, any reason I should not

11  recommend acceptance of the plea agreement?

12              MR. SHAFFER:  No, Your Honor.

13              THE COURT:  And do you think I've complied with

14  Rule 11, other than re-arraignment?

15              MR. SHAFFER:  Yes, Your Honor.

16              THE COURT:  Thank you.

17              Mr. Chaffin, any reason I should not recommend

18  acceptance?

19              MR. CHAFFIN:  No, Your Honor.

20              THE COURT:  And do you believe I've complied with

21  Rule 11?

22              MR. CHAFFIN:  Yes, Your Honor.

23              THE COURT:  Could you please do a final

24  arraignment of Ms. Hess?

25              MR. CHAFFIN:  Ms. Hess, the elements of mail fraud

1   in violation of Title 18 United States Code Section 1341 are

2   as follows:

3           First, the defendant devised, or intended to

4   devise, a scheme to defraud as alleged in the indictment;

5           Second, the defendant acted with specific intent

6   to defraud;

7           Third, the defendant mailed something, or caused

8   another person to mail something, through a private or

9   commercial interstate carrier for the purpose of carrying out

10  the scheme;

11          And fourth, the scheme employed false or

12  fraudulent pretenses, representations, or promises that were

13  material.

14          THE COURT:  Thank you, Mr. Chaffin.

15          Ms. Hess, I'll formally ask you then, with regard

16  to Count 1 for mail fraud and aiding and abetting in

17  violation of Title 18 United States Code Section 1341 and 18

18  United States Code Section 2, how do you plead, ma'am, guilty

19  or not guilty?

20          MS. HESS:  Guilty.

21          THE COURT:  All right.  I need to make certain

22  findings for the record then based off of that guilty plea.

23  If you don't understand any of what I go through just let me

24  know.

25          In the matter of the United States of America

1  versus Ms. Megan Hess, in the captioned Case Number 20-cr-98,

2  the Court having questioned the defendant and her attorneys

3  on the offer of her plea of guilty with regard to Count 1, a

4  felony, the defendant and her attorneys, having advised the

5  Court that they've conferred concerning the offered plea of

6  guilty in all aspects of the charge against her and any

7  defenses she might have, the Court having observed the

8  defendant's intelligence, demeanor, and attitude while

9  answering questions in this hearing today, and the Court

10 having observed that the defendant does not appear to be

11 under the influence of any medicine, drug, or other substance

12 or factor that might affect her actions or judgment in this

13 matter, the Court finds as follows:

14         The defendant is fully competent and capable of

15 entering an informed plea;

16         The defendant is aware of the nature of the charge

17 and the consequences of her plea;

18         The defendant has thoroughly discussed her plea

19 agreement with her attorneys;

20         The defendant has been represented through the

21 course of this case and this hearing by competent and

22 effective counsel with whom she has no objection, criticism,

23 or complaint;

24         The defendant has read and understands each and

25 every term of her plea agreement, in fact has had each of

1    those read to her verbatim;

2            The defendant has signed the plea agreement and

3    the statement by the defendant;

4            The defendant has voluntarily and knowingly and

5    intelligently entered a plea of guilty to Count 1 of the

6    indictment and has a full understanding of the nature,

7    circumstances, factual basis, and essential elements of the

8    charge;

9            The defendant's plea of guilty is not the result

10   of a mistake, misunderstanding, fear, coercion, or undue

11   influence;

12           The defendant's plea of guilty is not the result

13   of any promise or representation made to her by anyone,

14   including her own attorney, except as to those matters

15   discussed in this hearing and included in the plea agreement;

16           The defendant understands each of her legal rights

17   in this case, including her right to a jury trial, her right

18   to be represented during all stages of the proceedings by an

19   attorney or attorneys, including the right to court appointed

20   counsel which she's availed herself of;

21           The defendant understands the maximum sentence of

22   imprisonment of 20 years, the maximum fine, and the alternate

23   fine, the special assessment in terms of supervised release

24   that the Court might impose;

25               The defendant understands that the Court is not

1    bound by any sentence recommended in the plea agreement and

2    further understands that she will not be able to withdraw her

3    plea of guilty even if the Court does not follow the

4    recommendation;

5              The defendant understands each and every essential

6    element of the offense to which she has pled guilty and the

7    plea is supported by an independent basis in fact setting

8    forth each of the essential elements of the offense;

9              Counts 1 and 2 are accepted and admitted.

10             I will note that I am recommending acceptance of

11   the plea and that the defendant be adjudged guilty of Count

12   1, mail fraud and aiding and abetting.

13             With regard to that recommendation, I will

14   specifically note that the plea is essentially an open plea

15   here with a maximum sentence of 20 years, keeping in mind

16   that the sentence recommendation, or the sentence guidelines

17   range, is entirely a recommendation upon the Court and that

18   the presiding judicial officer can sentence the defendant

19   anywhere within that range and the defendant's age and the

20   amount of that sentence that she might impose if sentenced.

21             I find that that gives the sentencing judge an

22   appropriate range to potentially work with at the time of

23   sentencing.  So based on that, I do recommend acceptance of

24   the plea.

25             I am referring you, ma'am, to the probation

1    department for a pre-sentence investigation.

2            Are they on the phone, or we're just going to deal

3    with that later?

4            THE COURT CLERK:  They're not on the phone.

5            THE COURT:  Okay.

6            Your attorneys will talk with you about that, what

7    that means in practicality.  You'll need to meet with a

8    probation officer of the court in this matter to prepare that

9    pre-sentence investigation and submit that report.  Please

10   don't be confused by the title "probation officer" that has

11   nothing necessarily to do with the sentence.  That's just the

12   title of the person that is tasked to prepare that report.

13           Mr. Shaffer or Ms. Petrey will set that meeting up

14   for you as a condition of release, which we'll come back to.

15   You will have to engage in that process, and that is an order

16   of the Court.

17           Your sentencing hearing will not be a number of

18   months from now.

19           The report that is generated will be reviewed by

20   you and your attorneys before it comes to the Court.  You may

21   speak with them in the presence of your attorneys if you

22   wish.  The Court will not review that report until after you

23   have an opportunity to make sure you think it is accurate,

24   and if you have any objections to the factual contents or

25   guideline calculation your attorney can file an objection on

1    your behalf.

2            In addition, your lawyer may file motions and

3    provide the Court with other information that he or she

4    believes the Court should or will consider before sentencing.

5    At sentencing further statements or arguments might be made

6    by your attorney, attorneys for the government.  You will not

7    be able to make a -- you will not be able to have individuals

8    speak on your behalf at sentencing.  They may write letters

9    to the probation department that will be included in the pre-

10   sentence report.  In addition, you will be able to make a

11   statement and sentencing on your own behalf.

12           Mr. Chaffin, will you coordinate for the

13   government victim statements in whatever fashion Judge

14   Arguello would like to hear those for sentencing, as well?

15           MR. CHAFFIN:  Yes, Your Honor.

16           THE COURT:  Thank you.

17           You will have to appear on the date I'm about to

18   set for sentencing without any further notice.  I am going to

19   vacate the jury trial that exists for you, but not for any

20   co-defendant at this time.

21           In addition, I am finding motion Number 191,

22   motion to sever, moot at this point in time, as there's only

23   one defendant left.  It's also moot because you're the one

24   who filed it, or your attorney did on your behalf.

25           In terms of sentencing positions, motion for

1   departure, or varying sentencing, or any other motions or to

2   decrease, those are to be filed 14 days out, responses or

3   objections seven days out from sentencing.  Failing to timely

4   file could result in a continuance.  Failing to respond will

5   be construed as a concession of the relief requested.

6           Thank you to the security folks involved in

7   setting this up today.  I know that that was complex.  I'll

8   come back to departure here in a moment.

9           I will note that all parties may object in writing

10  to my findings and recommendations pursuant to Federal Rule

11  of Criminal Procedure 59(b)(2) within 14 days.

12          Let's get to some sentencing logistics, Mr.

13  Chaffin.  November's our next go around for Judge Arguello to

14  be here, and I'm assuming the government would like to

15  conduct this hearing here, given the community interest in

16  this matter and the victims.

17          MR. CHAFFIN:  Yes.  The government would like to

18  conduct the sentencing hearing here in Grand Junction.  I

19  would, given the number of things that are in dispute for

20  sentencing, and the factual presentation that will be

21  necessary, I would ask the Court to set a full day aside for

22  sentencing in this case.  And I would recommend that the

23  Court set sentencing on the January term, given the number of

24  items that are still in dispute and need to be resolved.

25          THE COURT:  Mr. Shaffer, Ms. Petrey, and I think

1   that might give an opportunity -- I don't know if you'll be

2   back, Ms. Petrey, by then or not in terms of work, but does

3   that work for you all, as well?

4         MR. SHAFFER:  Judge, we can accept an initial

5   sentencing date of January 3rd and don't take any issue with

6   scheduling for full day.

7         THE COURT:  Okay.  Well, what I will do is note

8   that I'm going to indicate that Judge Arguello's chamber,

9   that this needs to be set for the January term of court, and

10  a full day for the folks who are here, which includes you,

11  Ms. Hess.  I'm not telling you that this is going to occur on

12  January 3rd or not, and that's because we also have a number

13  of trials set at that point in time and Judge Arguello will

14  have to decide when and how she wants to set up her docket

15  that week.

16        I'll message them today and indicate we'd like to

17  get as firm a date as we can as soon as possible on the

18  docket so that everybody knows when that data is going to be.

19        You, Ms. Hess, must keep in touch with your

20  attorneys, and it's an order of the Court that you be here on

21  the date and time that is set.  That may very well be January

22  the 3rd at nine o'clock, but it could be sometime else that

23  week, or I guess conceivably the next week, if there's enough

24  trials that certain things have to be pushed.

25        Usually sentences are confined to an hour or two

1   in an afternoon after trial, so this is going to have to be

2   balanced with the trial calendar that's there, and it's not

3   my trial calendar so I can't do the balancing.

4             Mr. Chaffin, will the government take on the

5   responsibility of communicating that information to the

6   victim families so that everybody knows when that's going to

7   be?

8             MR. CHAFFIN:  Yes, Your Honor.  Do you know if the

9   same BTC capability will be available for sentencing?

10            THE COURT:  It will be.  I can't say that it'll be

11   the same codes, because that it'll go through Judge

12   Arguello's virtual courtroom rather than mine, I think, but

13   Ms. Barnes and Judge Arguello's staff will work that --

14            MR. CHAFFIN:  Thank you.

15            THE COURT:  -- between now and then.

16            MR. CHAFFIN:  I'll be in touch with the Court to

17   coordinate communication of that.

18            THE COURT:  Okay.

19            MR. CHAFFIN:  Thank you, Your Honor.

20            THE COURT:  And then --

21            THE COURT CLERK:  Are we setting a time?  I know

22   it's a placeholder.

23            THE COURT:  Let's just put a nine o'clock

24   placeholder for now, but I don't know that that's what

25   they're going to want to do, particularly if they have the

1  jury commissioner out here to set -- to pick a jury for

2  something else or something.

3          So, Mr. Chaffin, other than making -- following

4  through with sentencing conditions, and order of the Court to

5  get ready for that, does the government have any further

6  requests with regard to conditions of release?

7          MR. CHAFFIN:  No, Your Honor.

8          THE COURT:  All right.

9          So Ms. Hess, what that means is you are remaining

10 out on conditions of release until such time as your

11 sentencing date under the conditions that I already set at

12 the beginning of this case.  In addition to those conditions,

13 you must comply with the pre-sentence report process so that

14 we're ready to get that done on time.

15         Any questions about what's expected of you, ma'am?

16         MS. HESS:  No.

17         THE COURT:  Mr. Shaffer or Ms. Petrey, what might

18 make sense is if you all want to depart out the door to my

19 right at this point in time.  I think Mr. Chaffin may have a

20 few words that he wants to speak with with those in the

21 gallery, so I won't recess quite right yet.

22         Anything before we recess, Mr. Shaffer, from your

23 perspective?

24         MR. SHAFFER:  No, Your Honor.

25         THE COURT:  Mr. Chaffer, how about from your

1  perspective?

2          MR. CHAFFIN:  No, Your Honor.  Thank you.

3          THE COURT:  Okay.

4          And then, Mr. Chaffin, I assume whatever you would

5  like to say isn't going to be in my presence, because we're

6  now ex parte and we'll go off the record.  And then I don't

7  see any reason that you can't have the use of the courtroom

8  to the extent that you would like for the conceivable time.

9  I think the next thing we have is we're covering Durango at

10 1:00.  So I don't know that you want that long, but you got

11 an hour if you would like it.

12         MR. CHAFFIN:  Thank you very much, Your Honor.

13         THE COURT:  All right.  We'll be off the record.

14 Thank you.

15         THE COURT CLERK:  Please rise.  Court is in

16 recess.

17                    (Time noted:  11:49 a.m.)

18                       *  *  *  *  *

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2        I, RANDEL RAISON, certify that the foregoing is a

 3   correct transcript from the official electronic sound

 4   recording of the proceedings in the above-entitled matter, to

 5   the best of my ability.

 6

 7

 8   _____        August 23, 2022

 9   Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```