1

```
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF COLORADO
 2

 3    UNITED STATES OF AMERICA,     .  Case No. 20-cr-00098-CMA-GPG
                                    .
 4              Plaintiff,          .
                                    .
 5    vs.                           .
                                    .  Byron Rogers US Courthouse
 6    MEGAN HESS, and               .  1929 Stout Street
      SHIRLEY KOCH,                 .  Denver, CO  80294
 7                                  .
                                    .
 8              Defendants.         .  July 12, 2022
                                    .  1:39 p.m.
 9    . . . . . . . . . . . . . . .

10        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
          GORDON P. GALLAGHER, UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:           U.S. Attorney's Office
13                                    Grand Junction
                                   By:  Jeremy Lee Chaffin
14                                 205 North 4th Street
                                   Suite 400
15                                 Grand Junction, CO  81501
                                   (970) 257-7113
16
      For the Defendant            Martha H. Eskesen, P.C.
17    Shirley Koch:                By:  Martha Horowitz Eskesen
                                   7887 East Belleview Avenue
18                                 Suite 1100
                                   Denver, CO  80111
19                                 (303) 228-1668

20                                 Thomas E. Goodreid, Attorney
                                     At Law
21                                 By:  Thomas E. Goodreid
                                   7761 Shaffer Parkway
22                                 Suite 105
                                   Littleton, CO  80127
23                                 (303) 296-2048

24

25
```

1    Appearances Continued:

2    Also Present:                    Denise Henning
                                      Danielle McCarthy
3                                     James McCarthy
                                      Debra Schum
4                                     Judy Cressler
                                      Kathy Reese (phonetic)
5
     Court Recorder:                  Clerk's Office
6                                     U.S. District Court
                                      1929 Stout Street
7                                     Denver, CO  80294

8    Transcription Service:           AB Litigation Services
                                      216 16th Street, Suite 600
9                                     Denver, CO  80202
                                      (303) 296-0017
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

```
 1                      (Time noted:  1:39 p.m.)

 2              THE COURT CLERK:  Please rise.  Court is in

 3   session.

 4              THE COURT:  Thank you.  Please be seated.  Good

 5   afternoon, everybody.

 6         (Brief pause)

 7              THE COURT:  All right.  Good afternoon, everybody.

 8   We're here at 20-cr-98.  This is the United States versus Ms.

 9   Shirley Koch.

10              And could we take entries starting with the

11   government, please?

12              MR. CHAFFIN:  Good afternoon, Your Honor.  Jeremy

13   Chaffin for the government.

14              THE COURT:  Good afternoon.

15              And for Ms. Koch.

16              MS. ESKESEN:  Good afternoon, Your Honor.  Martha

17   Eskesen appearing with Ms. Koch.

18              THE COURT:  All right.  Am I pronouncing your

19   client's name correctly?

20              MS. ESKESEN:  You are, Your Honor.

21              THE COURT:  All right.

22              MS. ESKESEN:  Yes.

23              THE COURT:  Thank you.

24              MR. GOODREID:  And good afternoon, Your Honor.

25   Thomas Goodreid here also with Ms. Koch.
```

1          THE COURT:  All right.  Good afternoon to all of

2     you.

3          We're here today for a potential entry of a plea.

4     And let me start off by talking about some various documents

5     that I need to discuss.  I made some initial remarks last

6     time at the beginning of our hearing, just in terms of kind

7     of what we were doing for purposes of mostly folks who are in

8     the gallery.  I'm assuming that everybody probably remembers

9     those, so in the interest of brevity I won't go back and

10    address those again.

11         I will note, as I need to, that Ms. Koch is here

12    based off of an indictment that is filed at Document Number 1

13    in this matter.  That was filed back on March the 12th of

14    2020, and I'll circle back to that document here momentarily.

15         Moving on to March the 17th of 2020, I'll note

16    that Ms. Koch appeared before the Court and entered a not

17    guilty plea at that point in time, as captured at Document or

18    Entry Number 15 in this case.

19         At Document 40, which was filed on March the 20th

20    of 2020, there was a consent to my jurisdiction.  I have

21    reviewed that document, and that consent is unanimous and

22    includes change of plea.

23         On March the 24th of 2020 --

24         And let me stop for just a moment.  I know we have

25    folks on both video and audio, and that's great, as well as

1   here in the courtroom.  Somebody's document -- or somebody's

2   phone is giving us some feedback.  I think we just took care

3   of that, but if everybody could make sure that you are on

4   mute, that would be great.  For those of you who are on video

5   or audio who may be addressing me I will give you plenty of

6   time to unmute yourselves when the appropriate time arrives.

7   Thank you very much.

8             On March the 24th of 2020, at document number, or

9   Entry Number 43, this matter was referred to my jurisdiction.

10             Moving forward a couple of years.  On June the

11   22nd of 2022, at Document Number 221, a notice of disposition

12   was filed by Ms. Koch.

13             And that brings us up to today in terms of what

14   we're going to be doing.

15             Yeah.  Yeah.  And what I'll do is I'll do the same

16   thing as last time.  I'm going to announce the plea first and

17   then address that at the time, because I think that's

18   probably the most appropriate time.

19             Okay.  Ms. Koch, if I could have you stand up,

20   please?

21             Do you solemnly swear or affirm that all testimony

22   you're about to give in the matter now before the Court will

23   be the truth, the whole truth, and nothing but the truth?

24             MS. KOCH:  Yes, Your Honor.

25         Whereupon,

1               SHIRLEY KOCH

2          was duly sworn.

3               THE COURT:  All right.  Please be seated.

4               The record will reflect that Ms. Koch has been

5     sworn.  The matter is now before the Court based off of that

6     notice of disposition to head to a change of plea.  And this

7     is going to be on an indictment with regard to Count 3.  So

8     circling back, as I said I would, to the indictment, Ms.

9     Koch, let's talk about that.

10              Looking at that document, Counts 1 through 6 are

11    inclusive counts, and then they have a subset for Count 3

12    that I'll read only that part when I get there, but I need to

13    read the entirety of the count to you.

14              And that states as follows:

15              Counts 1 --

16              MS. ESKESEN:  Excuse me, Your Honor.

17              THE COURT:  Oh, yes, Ms. Eskesen?

18              MS. ESKESEN:  Your Honor, with all due respect,

19    Ms. Koch has had the indictment read to her and she's waived

20    it, and we would waive it again for purposes of the record.

21              THE COURT:  Okay.  I appreciate that.  Frankly, I

22    think I'm not willing to accept the waiver under those

23    circumstances.  I'm going to go ahead and read it, as I think

24    it's important to do so just in general.  I read these in

25    every plea, and particularly with regard to this one.

1          So Counts 1 through 6 reads:

2          Background, and it's going to take me about five

3    minutes to read through this.

4          Number one, Sunset Mesa Funeral Foundation was a

5    non-profit corporation incorporated in the state of Colorado.

6    SMFF was purportedly organized exclusively for charitable,

7    religious, educational, and scientific purposes, and its

8    purpose was purportedly to provide assistance to community

9    members who have no resources for funeral cremation services.

10   SMFF was formed by the defendant, Megan Hess, on or about May

11   the 4th of 2009.  Hess dissolved SMFF on or about February

12   the 7th of 2018.

13         On or about May the 28th of 2009, Hess created a

14   trade name for SMFF known as Donor Services.  Donor Services'

15   primary source of income was harvesting and marketing for

16   sale purportedly donated human remains such as heads, torsos,

17   arms, legs, or entire human bodies to customers who used the

18   remains for scientific, medical, or educational purposes.

19         At all times relevant to this indictment, Hess

20   operated her body broker services business under the name

21   Donor Services out of the same location as the funeral

22   business operating under the name Sunset Mesa Funeral

23   Directors in Montrose, Colorado.

24         On or about September the 14th of 2011, Hess

25   purchased SMFD on behalf of SMFF.  The following day, Hess

1   registered trade name Sunset Mesa Funeral Directors for SMFF.

2   From that date and continuing until February the 6th of 2018,

3   Hess owned and operated a funeral home providing burial and

4   cremation services under the SMFD name.

5          Hess was in charge of and handled most aspects of

6   SMFD and Donor Services, in particular Hess met with families

7   seeking funeral services from SMFD discussing the disposition

8   of the deceased and made funeral arrangements.

9          With regard to Donor Services, Hess handled most

10  of the advertisement, invoicing, and shipping arrangements,

11  and dealt directly with the end users or purchases that

12  purportedly donated human remains.

13         Defendant Shirley Koch assisted Hess in many of

14  these aspects related to the operation of SMFD and Donor

15  Services.  Koch was involved in meeting with families to

16  discuss the disposition of deceased individuals in processing

17  and preparing bodies for body broker services.

18         The scheme.  Beginning in or about 2010 and

19  continuing to on or about February the 6th of 2018, in the

20  state and District of Colorado and elsewhere, the defendants,

21  Hess and Koch, devised and intended to devise a scheme and

22  artifice to defraud and obtain money and property from

23  decedents, their families, their representatives, and other

24  customers by means of materially false and fraudulent

25  pretenses, representations and promises, and aided and

1    abetted the same.

2           It was part of the scheme that often Hess, and on

3    occasion Koch, would meet with families seeking cremation

4    services for their loved ones who had died.  During these

5    meetings Hess and Koch represented to the families, as the

6    families had requested, that SMFD would cremate the

7    descendants and provide -- the decedents and provide their

8    cremated remains back to families.

9           In many instances Hess and Koch neither discussed

10   or obtained authorization for donation of decedent's bodies

11   or body parts for body broker services.  In other instances

12   the topic of donation was raised by Hess or Koch and

13   specifically rejected by the families.  In such

14   circumstances, despite lacking any authorization whatsoever,

15   Hess and Koch harvested body parts from, or otherwise

16   prepared, entire bodies -- hundreds of decedents for body

17   broker services.

18          Some families agreed to donation.  Frequently,

19   these families believe based on the representations from Hess

20   or Koch that only a small sample such as tumor or other

21   portions of skin would be taken for testing or research.

22   Other families believed, based on representations from Hess

23   or Koch, that donated remains would be used to treat living

24   recipients.  Still others only authorized donation of

25   specific body parts, such as specific organs, but

1   specifically denied donation for anything else.

2        Frequently in such circumstances Hess and Koch

3   exceeded the authorization they obtained.  Remains would be

4   sold for purposes not contemplated by the families and body

5   parts beyond those which were authorized, if not entire

6   bodies, would be sold.  In each of these instances, the

7   families would not have authorized donation had they been

8   informed of what would have actually been done with their

9   loved one's remains.

10       The income derived from the body broker service

11  business allowed Hess to advertise rates for cremations and

12  often made SMFD the least expensive option in the area, and

13  as a result, Hess was able to ensure a constant supply of

14  bodies for her and Koch's body broker service business.  Hess

15  or Koch would also at times offer free or reduced rate

16  cremations to incentivize families to agree to donation of

17  their loved one's remains.

18       Hess-Koch or an employee of SMFD, at their

19  request, would provide cremains to the family representing

20  that they were the cremains delivered of the decedent.

21  In reality, this was frequently not the case.  In many

22  instances a decedent's entire body was sold through Donor

23  Services.  Nevertheless, the families were charged and paid

24  typically $1,000 or more for cremation that never occurred.

25       These families would receive the cremains replaced

1   or supplemented by Hess or Koch with the cremains from

2   another person or persons.  The families relied on the

3   representation that the cremains they received were that of

4   their loved ones in making final arrangements.

5         Hess advertised the remains offered from Donor

6   Services to customers or for body broker services businesses

7   legitimately and freely donated where this is often not the

8   case.  In order to support such claims Hess developed donor

9   authorization forms that purportedly would be signed by the

10  families of decedents when authorizing donation.

11        In dozens of instances records maintained by Hess

12  and Koch for Donor Services and SMFD contained donor

13  authorization forms that had forged signatures indicating a

14  donor was authorized when that had never occurred.  In

15  hundreds of other instances the records maintained by Hess or

16  Koch -- Hess and Koch contained no donor authorization form

17  at all, yet the decedent's remains were nevertheless sold

18  through Donor Services.  All of the customers of Donor

19  Services relied on Hess's representations that the remains

20  they purchased were legitimately donated.  These customers

21  would not have purchased the remains Hess sold had they known

22  the remains were not in fact donated and had instead been

23  stolen.

24        Many of the customers of Donor Services also

25  required that the remains they receive be free of

1   particularly infectious diseases, namely HIV and hepatitis.

2   Koch would frequently draw blood from the decedent whose

3   remains were to be sold and submit that blood for testing.

4         In dozen dozens of instances, Hess or Koch receive

5   results indicating the remains tested positive for these

6   diseases.  Rather than informed Donor Services customers of

7   this fact, Hess frequently sent these customers altered

8   laboratory reports indicating remains tested negative for

9   infectious diseases.  The customers relied on the

10  representations and would not have purchased the remains had

11  they known that the remains were infected with these

12  diseases.

13        In order to increase their profits Hess and Koch

14  shipped, or caused to be shipped, human remains from

15  decedents who tested positive for or died from infectious

16  diseases through the mail and on commercial flights in

17  violation of DOT regulations.

18        In total, Hess and Koch received hundreds of

19  thousands of dollars for remains sold through Donor Services

20  that were fraudulently obtained and represented as freely

21  donated, or otherwise fraudulently represented as free of

22  infectious diseases when that was, in fact, not the case.

23        The mailings.  On or about the date set forth

24  below, for purposes of executing the scheme the defendant's,

25  Megan Hess and Shirley Koch, deposited and caused to be

1  deposited, to be sent and delivered by a private and

2  commercial interstate carrier and knowing caused to be

3  delivered by a private and commercial interstate carrier,

4  according to the direction they're on and in a place which

5  was directed to be delivered by the person to whom it was

6  addressed.  The following matters as described below:

7       And for Count 3, Ms. Koch, which is the count you

8  are pleading guilty to, it states a date range of January the

9  17th through 19th of 2017.  A shipment containing the

10  fraudulently obtained remains of R.E., R.R., J.L., G.M.,

11  L.C., L.L., E.H., and S.H., and the fraudulently obtained and

12  infected remains of R.M.  All of that's in violation of Title

13  18 United States Code Section 1341 and Title 18 United States

14  Code Section 2.

15       I'm including by reference Counts 1, 2, 4, 5, and

16  6, but not specifically reading those at this point in time.

17       Ms. Koch, that is Count 1 -- I'm sorry, Count 3 of

18  the indictment that you would be pleading guilty to.

19       I have in front of me a plea agreement and a

20  statement by the defendant in advance of guilty plea.  I'm

21  going to mark those as Exhibit 1 for the plea agreement and

22  Exhibit 2 for the statement by defendant in advance.  And I

23  want to spend a couple of minutes going through with you the

24  plea agreement as I understand it and make sure that we're on

25  the same page.

1          The plea agreement tells me that you would be

2    pleading guilty to that count that I just read to you in

3    total;

4          That you would not contest the application of the

5    United States sentencing guideline adjustments as set forth

6    in the advisory calculation below;

7          That you would forgo any motion or request for

8    departure or variance outside the advisory guideline range

9    for what is a total offense level of 26, and a criminal

10   history of category one as calculated by the parties in the

11   advisory guideline calculation section below;

12         That you would waive certain appellate and

13   collateral attack rights as set forth in the waiver of

14   appeal;

15         That you would be liable for restitution to the

16   victims in an amount to be determined at sentencing which

17   could include joint and several liability for some or all of

18   the amount with the co-defendant.  And I'll come back and

19   briefly explain that concept here in a moment.

20         That you would agree not to contest forfeiture as

21   set forth in the forfeiture section below;

22         And that you would comply with any other

23   obligations as disclosed to the Court.

24         In return for all of that the government is

25   agreeing to dismiss the remaining counts in the indictment

1    with prejudice, which means they could not be brought back

2    against you only;

3          That the government would not contest the

4    sentencing guideline calculation as set forth in the advisory

5    guideline calculations set below -- forth below;

6          And that the government would not pursue

7    additional guideline adjustments beyond that set forth in the

8    calculation;

9          That the government would recommend a sentence

10   within the advisory guideline range for a total offense level

11   of 26 and a criminal history category of one as calculated by

12   the guideline section below;

13         That the government would recommend that you

14   receive a two level reduction for acceptance of

15   responsibility pursuant to guideline 3E1.1(a), and file a

16   motion that you get a one level reduction for acceptance of

17   responsibility under guideline 3E1.1(b), provided that you do

18   not engage in conduct prohibited or otherwise implicating

19   guidelines 3C1.1 and 3E1.1 between now and sentencing;

20         And that they would forego any motion or request

21   for departure or variant outside the advisory guideline range

22   for a level of 26 in a criminal history category of one.

23         Should the plea be vacated upon your motion, the

24   government, in its sole discretion, could move to reinstate

25   any or all of the counts, dismiss pursuant to this agreement,

1   and potentially file a superseding indictment, and that this

2   is not binding on the Court.

3           I'm going to deal with a couple of the things

4   mentioned therein, and then I'll move on to the appellate

5   waiver here in a moment.

6           I generally don't discuss the guideline range at

7   this point, but because of the way that it's specifically set

8   forth in the plea agreement, I think I need to address that

9   at this point in time.

10          Right now, when I look at Page 18, Subsection G,

11  it states that the guideline range is 63 to 78 months.  And

12  basically, there's a lot of different pieces of the puzzle in

13  terms of the sentencing, but one of the best ways of thinking

14  about it is really that your attorneys and the government

15  have agreed that they believe that that will be the range

16  that applies and that they're really not moving to go outside

17  of that range, 63 to 78 months.  But this is not binding upon

18  the Court.

19          The maximum sentence for the charge that you are

20  pleading guilty to is 20 years.  As I'm going to tell you

21  here in a couple of minutes, the sentencing recommendations

22  and the guideline calculation are not binding upon the Court,

23  and if the Court decides to sentence you either below or

24  above the guideline range, but within the maximum sentence,

25  that would not give you the ability to withdraw from your

1    plea at the time of sentencing.

2           Also, in terms of this concept of joint and

3    several liability, what that means generally is that all

4    defendants who are ordered to pay some sort of restitution or

5    the like are ordered to pay that in total.  Victims are not

6    entitled to double recover, but it's not the victim's problem

7    to sort out who's going to make the payment, it's your

8    problem.  And what that means often is that if there's one

9    person who has more resources, or maybe gets a shorter

10   sentence and is thus more able to pay, that that amount falls

11   on that defendant and not the other defendant, because for

12   practical purposes they may not be in the position of making

13   payments.

14          Having reviewed your plea agreement and your co-

15   defendant's plea agreement, it just strikes me that you might

16   be the person with a shorter sentence.  I'm not telling you

17   that that's going to happen, but it could happen.  And if it

18   did, that means that you might be the person who pays more

19   than your share of restitution, and if so, as I said,

20   basically that's your problem, not the victim's problem, and

21   you'll have to sort it out to the extent that you can with

22   your co-defendant at a later time, but it doesn't fall on the

23   Court and it doesn't fall on the victims.

24          All right.  Moving on to the waiver of appeal.

25          You are aware that 18 United States Code 3742

1  affords the right to appeal the sentence, including the

2  manner in which the sentence is determined.  Understanding

3  this in exchange for the concession made by the government in

4  this agreement you are knowingly, voluntarily waiving the

5  right to appeal any matter in connection with the

6  prosecution, conviction, or sentence included in the

7  restitution order unless it meets one of the following

8  criteria:

9        That the sentence exceeds the maximum sentence

10  provided in the statute of conviction;

11        That the sentence exceeds the top end of the

12  advisory guideline range from the sentencing guideline as it

13  applies to a criminal history of an offense level of 26;

14        Or the government appeals.

15        If the first criteria were to apply you could

16  appeal only issues of how your sentence exceeds the statutory

17  maximum, but if one of the latter two criteria were to apply

18  you could appeal on any ground properly available in an

19  appeal following a guilty plea.

20        You also knowingly and voluntarily waive the right

21  to challenge the prosecution, conviction, or sentence in

22  what's called a collateral attack.  That includes, but is not

23  limited to, a motion brought under 28 United States Code

24  2255.  This waiver provision does not prevent you from

25  seeking relief otherwise available in a collateral attack on

1    the grounds that you would receive the benefit of an

2    explicitly retroactive change in the sentencing guidelines or

3    sentencing statute;

4              That you were deprived of the effective assistance

5    of counsel;

6              Or that you were prejudiced by prosecutorial

7    misconduct.

8              You are also waiving the right to appeal any

9    sentence imposed below or within the guideline range upon a

10   revocation of supervised releasing this case, except if you

11   unsuccessfully object to the grade of violation applied by

12   the Court during the court revocation proceedings.  In that

13   event, the waiver does not apply and you could appeal a

14   sentence imposed upon a revocation of supervised release even

15   if the sentence was to fall below or within the guideline

16   range calculated by the Court.

17             You also waive the right to appeal any denial of

18   any motion filed under 38582(c)(1)(a) where such denial

19   rested in any part upon the Court's determination that a

20   sentence reduction was not warranted under the factors set

21   forth in 3553(a).

22             This does not apply to an appeal of a denied

23   3852(c)(1)(a) Subsection 1 motion where the Court -- where

24   the District Court in denying the motion on 3553(a) grounds

25   failed to consider the facts allegedly establishing

1  extraordinarily and compelling circumstances as part of that

2  analysis.

3           And then, finally, there is restitution.

4           As I have discussed, you would be ordered to pay

5  an amount determined by the Court at sentencing.  It states

6  that the parties intend to confer with regard to that.  If

7  that amount is unanticipated, basically if it's more than you

8  think, that's not going to allow you to withdraw from your

9  guilty plea.

10          It also does not preclude the filing of any civil

11  suit or administrative action, and it would not be

12  dischargeable in bankruptcy, and you would not try to

13  discharge it, and that you would be admitting to certain

14  forfeiture allegations and would forfeit all title, all

15  property and assets, subject to forfeiture immediately;

16          That there would be a money judgment obtained for

17  the scheme from you;

18          That there would be a forfeiture of a, it looks

19  like a property, at 2108 Devon Street in Montrose, 165

20  Merchant Drive in Montrose, and then a 2011 GMC Yukon, and

21  you're agreeing to forfeiture of all of those things, and

22  you're waiving a number of rights associated with that as set

23  forth in that subsection.

24          That does not act to satisfy fines, restitution,

25  costs of imprisonment, or other things.

1            The U.S. Attorney's Office for the District of

2    Colorado is recommending to the attorney general the net

3    proceeds from that be remitted or restored to eligible

4    victims of the offense, but the U.S. Attorney's Office for

5    Colorado can only recommend such relief, and whether or not

6    the Department of Justice does that is up to the Department

7    of Justice.

8            Ms. Koch, that's a mouthful, but ultimately that's

9    how I understand the plea agreement.  Is that how you

10   understand it?

11           MS. KOCH:  Yes.

12           THE COURT:  Okay.

13           MS. KOCH:  Yes, sir.

14           THE COURT:  All right.  And Ms. Hess, then, would

15   you mind swinging just the mic over towards your client --

16           MS. HESS:  Sure.

17           THE COURT:  -- just so that she can -- okay.

18           Ms. Koch, do you think that there are any terms or

19   conditions of the plea agreement that I have not discussed

20   with you?

21           MS. KOCH:  No, Your Honor.

22           THE COURT:  All right.

23           Ms. Eskesen, from your perspective, are there

24   terms or conditions that need to be discussed that I have not

25   gone through?  And is that the Defense's perspective on the

1  plea agreement?

2          MS. ESKESEN:  Your Honor, I think you've reviewed

3  all of the provisions.

4          THE COURT:  Okay.

5          Mr. Chaffin, is that also the government's

6  perspective?

7          MR. CHAFFIN:  Yes, Your Honor.

8          THE COURT:  All right.  Mr. Chaffin, I did receive

9  an email from Ms. Barnes before we started indicating that

10 there's a number of victims in the matter who want to address

11 the Court.  I suspect it's probably with regard to the plea

12 agreement, so given that that's what we're talking about, I

13 think this is probably an appropriate time, if that's what

14 the government would like.

15         MR. CHAFFIN:  Thank you, Your Honor.

16         I would start, if I may, with just conveying to

17 the Court on behalf of some victims, sentiments that they

18 have asked me to convey to the Court.

19         THE COURT:  Absolutely.

20         MR. CHAFFIN:  A number of victims have expressed

21 dissatisfaction with the plea and the government's agreement

22 to limit the sentence and would encourage the Court not to

23 accept the plea agreement on that basis.

24         Other victims have expressed to me and have asked

25 me to convey to the Court that they would ask the Court not

1    to accept the plea unless Ms. Koch makes a statement

2    acknowledging her role in the offense and accepting

3    responsibility.

4            As the Court may recall, Ms. Hess, in her change

5    of plea, had difficulty doing that and a number of victims

6    believed that the Court should not have accepted her plea in

7    that circumstance and would ask the Court not to accept Ms.

8    Koch's plea if something similar occurs.

9            Those are the sentiments that victims have asked

10   me to convey to the Court.  There are a number of individuals

11   who would also like to address the Court personally.  I think

12   it makes sense to start with Mrs. Danielle McCarthy, she's on

13   video.  If the Court would allow her to address it.

14           THE COURT:  I would.  Before I turn to Ms.

15   McCarthy, I want to address a couple of those things

16   directly, because I think that it will flow through to what

17   other folks say.

18           So first, with regard to the plea agreement, I can

19   tell the parties now I have to reserve my final judgment

20   until the end of all of this, and I will absolutely do so,

21   but there are different ways that pleas can be entered in

22   federal court.  One of those ways, what's called often an

23   11(c)(1)(c) plea, but the rule probably doesn't matter from

24   your all's perspective, what you want to know is kind of what

25   it means.  What that rule means is that a court is bound by a

1   plea and cannot change it.  So sometimes, and that's not the

2   case here, sometimes the government either sets forth a

3   specific range or a specific number and the court has to take

4   that number or reject the plea.

5          The vast majority of pleas, which includes this

6   one, include the ability for individuals to make a

7   recommendation to the Court.  And I'll have this discussion

8   here in a little bit with Ms. Koch.  But that recommendation

9   is in no way binding upon the Court.  And as you've already

10  heard me say, and as those of you who were here for the plea

11  last week or the week before heard me say, the maximum

12  sentence is 20 years.  That is the case with this plea

13  agreement here.  Obviously you've also heard that the

14  government's going to make a recommendation, but that

15  recommendation is in no way binding, not upon me, but upon

16  the parties and upon the sentencing judge.

17         I won't be the sentencing judge in this case.  I

18  don't have that power.  That'll be presumably Judge Arguello.

19  So from what I've heard about the plea so far, Judge Arguello

20  will be able to sentence Ms. Koch up to 20 years in prison,

21  and for that reason, I'm not inclined to reject the plea

22  because recommendations are just that, they are

23  recommendations.  And those of you who wish will absolutely

24  have the opportunity to be here at sentencing and say what

25  you wish, which may very well include asking the Court to

1   sentence Ms. Koch to the full entirety of that 20 years, or

2   you may ask for something else.  I'm not telling you what to

3   ask for, or to ask for anything at all, but that will be open

4   to the Court.

5           So this is not binding upon the Court, and because

6   of that, I'm not inclined to reject it.

7           With regard to the acceptance of responsibility

8   issue, that's a little bit more nuanced.  And let me address

9   that briefly, as well.

10          When a person comes into court and pleads guilty

11  they are, at least legally, accepting responsibility for a

12  criminal act and breaking their silence by saying that

13  they're guilty.  Of course we all know that there are various

14  levels of responsibility that people can and do take when

15  they say that they did something, and really that's something

16  that shakes out at a later time.

17          And what I mean by that is there will be various

18  reports that are done in this.  The government and the

19  defense will have an opportunity to make arguments, as you

20  all will have an opportunity to make statements to Judge

21  Arguello in terms of what you think her appropriate sentence

22  would be.

23          And to the extent that somebody is not taking

24  responsibility for their act and they're qualifying their

25  acceptance of responsibility by saying "yes but" that is

1  something that judges very frequently take into account when

2  they sentence people.  And sometimes, I'm not saying it'll be

3  here, because again I'm not the person who will be doing any

4  of these sentencings, but sometimes that works out worse for

5  the person who's pleading guilty because they're not

6  accepting responsibility, and by not really taking a full

7  measure of responsibility for what they are doing they

8  sometimes get sentenced worse for that.

9          Again, I'm not saying that that's how it's going

10  to shake out here.  I'm not the person sentencing

11  individuals, but the level of acceptance of responsibility is

12  something that is reviewed through the pre-sentence report

13  process and is reported to the judge so that the judge

14  sentencing folks can take that into account at the time of

15  sentencing; sometimes for good, sometimes for bad, depending

16  upon the circumstances.

17          So with that in mind, I don't want to in any way

18  short circuit what folks might want to say, so let me start,

19  Ms. McCarthy, with you, ma'am.  And what I'll ask you to do

20  is just state your name, and spell your full name so that Ms.

21  Barnes has that for the record, and then you can tell me

22  whatever it is that you would like.

23          MS. MCCARTHY:  Thank you, Your Honor.  Danielle

24  McCarthy; D-A-N-I-E-L-L-E, McCarthy, M-C-C-A-R-T-H-Y, Mrs.

25  David Allen McCarthy, Jr., gold star spouse, of a 100 percent

1   permanent total veteran who has done more for this country

2   than either one of these defendants.  The deliberate,

3   intentional, depraved actions, along with the callous hubris

4   in which this defendant displayed her deeds is repulsive and

5   just as unconscionable as her co-defendant.

6           Fifty-three long months of this legal travesty and

7   trauma for the actual victims and the living victims of this

8   case are finally being addressed with today's plea.  Today

9   begins the closure needed by the numerous families impacted

10  by this case.  The plea offer, while extremely lenient given

11  the horrific nature of the deeds, will finally bring closure

12  to this case, and more importantly, allow healing to begin

13  for the actual victim's families.

14          Thank you, Your Honor.

15          THE COURT:  Thank you, Ms. McCarthy.

16          Mr. Chaffin?

17          MR. CHAFFIN:  Your Honor, Ms. Denise Henning would

18  like to address the Court.

19          THE COURT:  Okay.

20          All right.  Good afternoon, Ms. Hemmi (phonetic).

21  I think I may have heard your name correctly, but if you

22  could tell me how you spell your first and last name, please?

23          MS. HENNING:  Yes.  My name is Denise Henning.

24  It's spelled D-E-N-I-S-E, last name H-E-N-N-I-N-G.

25          THE COURT:  All right. Ms. --

1          MS. HENNING:  And with me is my husband, Jim or

2    James Henning.

3          THE COURT:  All right.  Good afternoon to both of

4    you.  What would you all like to tell me?

5          MS. HENNING:  Shirley Koch is here to accept a

6    plea deal for the multitude of times she abetted the

7    unauthorized sale of human bodies and body parts, including

8    those of both my parents, Harry and Lillian Peacock

9    (phonetic), in 2013, as well as many more, until they were

10   shut down by the FBI in 2018.  We are not opposed to this

11   plea agreement, should Shirley Koch acknowledge her crimes,

12   as it would be a small mercy to these victims like us who

13   have been waiting years for any measure of justice.  We feel

14   it is a merciful plea for Shirley Koch because it spares her

15   wide examination of her actions and deeds to hundreds of

16   unwilling victims, as well as longer incarceration we feel a

17   jury trial would give her.

18          However, if this court feels Shirley Koch does not

19   acknowledge her guilt in a forthright manner today to receive

20   this generous deal, but feels they must move forward to trial

21   to fully expose her deeds and damn her actions, then we are

22   with you and will be there to provide all the evidence and

23   context we have the power to give.

24          We paid nearly $2,000 for my dear, sweet mother's

25   cremation.  They took our money, gave us a box of who knows

 1  what, and sold her body whole out the back door within 24

 2  hours.   Not for the humanitarian image the defendant and

 3  others choose to delude themselves with.   No, she sold it to

 4  another disreputable place that was shut down for defrosting

 5  a human torso in the parking lot with a garden hose.

 6            Now imagine the things you don't see that were

 7  being done to our dear ones.   Wake up.   Pay attention.

 8  Shirley Koch is just a link in a chain of corpse abusers and

 9  profiteers and if she is not held accountable it could be you

10  or your loved ones who are victimized next time and this is

11  how your family will spend years of their lives fighting for

12  justice.

13            We respectfully request Shirley Koch be held in

14  confinement until sentencing.   We think it is a travesty that

15  she and her co-conspirator have walked freely all these many

16  years while we waited for justice.

17            And I thank you.

18            THE COURT:   Thank you, Ms. Henning.

19            MR. CHAFFIN:   Your Honor, the next victim that

20  would like to address the Court is Judy Cressler.

21            THE COURT:   All right.   Was it Pressler or

22  Cressler?

23            MR. CHAFFIN:   Cressler.

24            THE COURT:   Thank you.   Ms. Cressler.

25            MS. CRESSLER:   Hello.

```
 1              THE COURT:  Hi, Ms. Cressler.
 2              MR. CHAFFIN:  My name is Judy, J-U-D-Y, Cressler,
 3    C-R-E-S-S-L-E-R.
 4              THE COURT:  Thank you, Ms. Cressler.
 5              MS. CRESSLER:  Thank you, Your Honor.
 6              My father, Harold Cressler, died December 7th,
 7    2015, but six weeks later my family and I were thrown
 8    headlong into this nightmare created by Megan Hess and
 9    Shirley Koch.  Despite my father's death certificate saying
10    "donation" on it, Megan Hess told my stepmother she had kept
11    my father's body for six weeks and did her own research on
12    his body and then had cremated my father.  Hess gave my
13    family a cheap, plastic box of cremains with my father's name
14    on it.
15              By April of 2016, I had filed a complaint with the
16    Department of Regulatory Agencies outlining my suspicions and
17    belief that my father had been cut up and sold by Sunset Mesa
18    Funeral Home.  To me, it felt like he had been murdered after
19    he died.  The truth is, Your Honor, my father's body was
20    neither donated or cremated, but his entire body was sold by
21    Hess and Koch to a plastination company in Saudi Arabia for
22    the price of a cheap used car.
23              That box of cremains we have actually contains the
24    mixed ashes of other people along with burnt trash, like
25    floral wire, tooth caps, broken glass, snaps from a Wrangler
```

1   western shirt, and the inlay of a Swiss army knife.  Hess and

2   Koch burned trash with human remains because these people

3   were trash to them because they could not be sold.

4            Because of the greed of these two grave robbers,

5   my family will never be able to get my father's body back

6   from Saudi Arabia to lay him to rest in way proper for a

7   Korean conflict war veteran, an American, a Christian, and a

8   human being.  However, I will, today, agree with Shirley

9   Koch's guilty plea only to hopefully help all of the hundreds

10  and hundreds of loved ones to be able to transition into the

11  next stage of grief that can only come once these evil, ugly-

12  hearted women are in prison.  For most of us, there will

13  never be closure.

14            And the last thing I want to say is, I don't

15  believe there was anything that Megan Hess did in this scheme

16  that her mother, Shirley Koch, was not aware of or a part of,

17  nor was there anything that Shirley Koch did in this scheme

18  that her daughter, Megan Hess, was not aware of or a part of.

19  I believe they were co-conspirators in every aspect of this

20  body snatching scheme.

21            Thank you.

22            THE COURT:  Thank you, Ms. Cressler.

23            MR. CHAFFIN:  Your Honor, Kathy Reese (phonetic)

24  would like to address the Court.

25            THE COURT:  Okay.

1          MS. REESE:  You already addressed my question.

2          THE COURT:  Okay.  Well, you certainly can speak

3  if you'd like to, Ms. Reese.

4          MS. REESE:  I honestly don't think I can right

5  now.

6          THE COURT:  Okay.

7          MS. REESE:  Thank you.

8          THE COURT:  Thank you.

9          MR. CHAFFIN:  Your Honor, then Debra Schum would

10  like to address the Court.

11          THE COURT:  Okay.

12          Good afternoon, Ms. Schum.

13          MS. SCHUM:  Thank you, Your Honor.  My name is

14  Debra Schum; D-E-B-R-A, S-C-H-U-M.

15          THE COURT:  Thank you.

16          MS. SCHUM:  Thank you for hearing me today, Your

17  Honor.  It has been four years since I first talked to the

18  FBI and was informed of what Ms. Koch and Ms. Hess did to

19  Laura Lee Johnson and the lies and the con job that they

20  pulled on me and so many others.  It's been that long because

21  Ms. Koch in particular has created delay after delay, so I'm

22  relieved that we have finally reached the point that she is

23  now willing to admit what she did and plead guilty.

24          I am not at all pleased with the sentence that's

25  being discussed.  I have had my own personal encounter with

1  Ms. Koch, and I believe that a grifter of this caliber

2  deserves a lot more prison time than that.  We'll see if the

3  judge agrees.

4        I now look for -- I would encourage you to accept

5  the guilty plea, and we will of course talk with the

6  sentencing judge about that amount of time.

7        I now look forward to hearing Ms. Koch admit what

8  we all know that she has done.  Thank you, sir.

9        THE COURT:  Thank you, Ms. Schum.

10       MR. CHAFFIN:  Your Honor, those are all the

11  victims that have indicated they would like to address the

12  Court today.

13       THE COURT:  All right.  Thank you, Mr. Chaffin.

14       All right.  Based off of that, the matter is now

15  before the Court for the change of the defendant's plea,

16  consideration of an advisement with regard to the party's

17  plea agreement, and rearrangement under Federal Rule of

18  Criminal Procedure 10.  As I noted, I have Exhibits 1 and 2,

19  and we'll talk about signatures here in a moment.

20       Ms. Koch, let me speak with you a little bit about

21  the oath that -- oh, you can stay seated, about the oath that

22  I gave to you here a few moments ago.

23       Do you understand, ma'am, that you are now under

24  oath and that if you were to answer any of my questions

25  falsely those answers could later be used against you in a

1    prosecution for perjury or making a false statement?

2              MS. KOCH:  Yes, Your Honor.

3              THE COURT:  Do you understand that you have the

4    right to remain silent and you do not have to answer any of

5    my questions in this hearing?

6              MS. KOCH:  Yes, Your Honor.

7              THE COURT:  Before I can accept your plea, I have

8    to make sure that you understand the charges brought against

9    you, that you understand your choices and the consequences of

10   those choices, that your decision to plead guilty is

11   voluntary, and that you have not been pressured into that

12   decision, and that there is a factual basis for your plea.

13   Therefore, before I can accept your plea, I have to ask you a

14   number of questions about the proposed plea agreement and the

15   offense to which you're pleading guilty, and I'll need you to

16   answer those questions.

17             So for purposes of this hearing, do you give up

18   your right to remain silent so that I can ask you those

19   questions?

20             MS. KOCH:  Yes, Your Honor.

21             THE COURT:  All right.  Ms. Eskesen, do you concur

22   in your client's waiver of her right to remain silent for

23   purposes of this hearing?

24             MS. ESKESEN:  Yes, Your Honor.

25             THE COURT:  All right.

1         Ms. Koch, I also have to make sure that you

2    understand that as of this moment I understand you have filed

3    a notice of disposition with the Court, however that does not

4    bind your decision making.  You will not be bound until I ask

5    you formally at the end of this hearing if you want to plead

6    guilty or not.  At any point in time up until then, you can

7    tell me that you don't want to do this and you can stop this

8    train from going forward.  Do you understand that, ma'am?

9         MS. KOCH:  Yes, Your Honor.

10        THE COURT:  Also, as we're going along if I tell

11   you something or ask you something you don't understand I'll

12   need you to let me know so that I can clarify it for you, and

13   at any point in time as we move forward if you want to speak

14   with your attorney or attorneys, either privately or openly,

15   I need you to let me know that and I'll make arrangements,

16   whether that's one time or many times.  Do you understand

17   that, as well?

18        MS. KOCH:  Yes, I do.

19        THE COURT:  Okay.  Ma'am, what is your true and

20   correct full name?

21        MS. KOCH:  My name is Shirley Ann Koch.

22        THE COURT:  And Ms. Koch, how old are you?

23        MS. KOCH:  I'm 69, sir.

24        THE COURT:  And what level of school or education

25   have you completed?

1           MS. KOCH:  I completed my second year of college.

2           THE COURT:  And can you read and write in English?

3           MS. KOCH:  Yes, sir.

4           THE COURT:  Are you under the influence today of

5    any drug, narcotic, marijuana, alcohol, or medicine?

6           MS. KOCH:  No, I'm not, Your Honor.

7           THE COURT:  Have you taken any of those things

8    within the last three days?

9           MS. KOCH:  No, Your Honor.

10           THE COURT:  Is there anything about how you are

11    feeling right now that keeps you from understanding what's

12    going -- oh.

13           MR. GOODREID:  Your Honor?

14           THE COURT:  Yes, sir?

15           MR. GOODREID:  Your Honor, Ms. Koch wants to

16    qualify that last answer a little bit.  She's taking a

17    prescription medication --

18           THE COURT:  Okay.  Yeah, let's --

19           MR. GOODREID:  -- if that counts?

20           THE COURT:  Absolutely.  Well, it counts, but how

21    deep a dive we need to go into that we'll find out.

22           So Ms. Koch, I don't need to pry too much, but I

23    guess I need to know just generally, what are you taking

24    medication wise?

25           MS. KOCH:  I take three different types of

1   antidepressants.

2              THE COURT:  Okay.

3              MS. KOCH:  Okay.  Do you need to know those names,

4   sir?

5              THE COURT:  Not necessarily.

6              MS. KOCH:  No.  Okay.

7              THE COURT:  What else do you take?

8              MS. KOCH:  I take a new prescription for

9   esophageal reflux disease.

10             THE COURT:  Okay.  All right.

11             MS. KOCH:  Okay.  And I take Metformin for my

12  diabetes.

13             THE COURT:  Okay.

14             MS. KOCH:  And I take Meloxicam for pain relief.

15             THE COURT:  Okay.  And with regard to all of

16  those, are you taking them in the manner prescribed by the

17  physician and the dosages and the times and things of that

18  nature?

19             MS. KOCH:  Yes, Your Honor.

20             THE COURT:  Do any of those medicines keep you

21  from mentally understanding what's going on right now?

22             MS. KOCH:  No, Your Honor.

23             THE COURT:  Do they make you fuzzy or anything

24  else like that?

25             MS. KOCH:  No, Your Honor.

1      THE COURT:  You've been reviewing documents, going

2  over things with your attorneys, things of that nature,

3  during any of those times did those medications make it so

4  that you could not understand anything about what was going

5  on or what you were doing or what you were agreeing to?

6      MS. KOCH:  No, Your Honor.

7      THE COURT:  Mr. Chaffin, is the government

8  requesting any more inquiry with regard to that issue?

9      MR. CHAFFIN:  No, Your Honor.  I think that's

10  sufficient.

11      THE COURT:  All right.  Ma'am, do you suffer from

12  any diagnosed form of mental illness or emotional disability?

13      MS. KOCH:  Yes.  I suffer from depression.

14      THE COURT:  Okay.  And in terms of that, is that

15  being treated by those different antidepressants that we just

16  discussed?

17      MS. KOCH:  Yes, Your Honor.

18      THE COURT:  Okay.  Is it under control to the

19  point that either when you were reviewing things in this

20  case, or now, that it in any way is keeping you from moving

21  forward and understanding what's going on with this case?

22      MS. KOCH:  No, Your Honor.

23      THE COURT:  Do you think that you do understand

24  what's going on with this case?

25      MS. KOCH:  Yes, I do.

1          THE COURT:  Is there anything about how you feel

2   right now physically, emotionally, or mentally, that prevents

3   you from understanding what's going on in this hearing?

4          MS. KOCH:  No, Your Honor.

5          THE COURT:  When you were reviewing documents,

6   making a decision as to what you wanted to do in this case,

7   is there anything physically, mentally, or emotionally that

8   prevented you from understanding and making an intelligent,

9   full decision with regard to that?

10          MS. KOCH:  No, Your Honor.

11          THE COURT:  Okay.  Ms. Eskesen, have you talked

12   with your client about these proceedings today?

13          MS. ESKESEN:  Yes, I have, Your Honor.

14          THE COURT:  Do you have any reason to believe that

15   she should not go forward with this plea?

16          MS. ESKESEN:  No, I do not.

17          THE COURT:  All right.  And do you believe that

18   she is in full possession of her faculties and competent to

19   proceed?

20          MS. ESKESEN:  Yes, I do.

21          THE COURT:  All right.  Based off of the inquiry

22   that I've made, certainly Ms. Eskesen -- I'm sorry, Ms. Koch

23   has some medications that she takes, and at least one

24   diagnosed form of mental illness or disability, but that does

25   not prevent her from entering into a plea so long as it does

1   not prevent her from understanding what's going on.

2            Ms. Koch has indicated that she does understand

3   what's going on, that she's in full possession of her

4   faculties.  In terms of my observations of Ms. Koch here

5   today in court, she's answered those questions lucidly,

6   quickly.  There haven't been any unusual delays or anything

7   that would indicate to me that there's some kind of mental

8   disability that's preventing Ms. Koch from understanding

9   what's going on.  So I find her to be in full possession of

10  her faculties and competent to proceed based off of my

11  individualized observations, my inquiry, and the statement of

12  her attorney.

13            All right.  Let's move back to the indictment.

14  That was that long document, Document 1, that I read to you,

15  Ms. Koch, early on in this proceeding.

16            Have you read and discussed all of the charges in

17  that indictment with your attorney?

18            MS. KOCH:  Yes, Your Honor.

19            THE COURT:  Have either of your attorneys, or all

20  of them, answered any questions that you might have about

21  that document to your satisfaction?

22            MS. KOCH:  Yes, Your Honor.

23            THE COURT:  Do you believe that you understand all

24  of the charges brought against you in that document?

25            MS. KOCH:  Yes, I do, Your Honor.

1            THE COURT:  I've gone over with you the plea

2    agreement.  Do you agree with the description of the

3    agreement that I laid out earlier in this hearing?

4            MS. KOCH:  Yes, Your Honor.

5            THE COURT:  At some point I suspect that you

6    discussed that agreement with your attorneys.  Can you tell

7    me how you did that?

8            MS. KOCH:  Well, we had meetings.

9            THE COURT:  Okay.

10           MS. KOCH:  Several meetings.  And we discussed all

11   of the possibilities.

12           THE COURT:  Okay.  Did you have the opportunity to

13   read and discuss each of the documents that we're going over

14   here today?

15           MS. KOCH:  Yes, Your Honor.

16           THE COURT:  As you were going through those with

17   your attorneys, did you have the opportunity to ask them any

18   questions that you might have about the plea agreement?

19           MS. KOCH:  Yes, I did, Your Honor.

20           THE COURT:  Did they answer all of your questions

21   to your satisfaction?

22           MS. KOCH:  Yes, Your Honor.

23           THE COURT:  All right.  Looking at this plea

24   agreement, it is lengthy, and that is because it includes in

25   the plea agreement a very lengthy section going through with

1   you the factual basis of what happened.  That starts on Page

2   19, and I think it runs through and including Page 17 or 18.

3   Sorry, it runs through and including Page 16 of the plea

4   agreement.  So pages 9 through 16 set forth the facts in this

5   document.

6           That's important because those are the facts that

7   the government believes that it could prove if this matter

8   went to trial.  By entering into this plea agreement you are

9   admitting that each and every one of those facts are true.  I

10  will treat them as true today for purposes of considering

11  your plea, and probably even more importantly, the sentencing

12  judge is going to treat them as true for purposes of

13  determining your sentence.

14          Have you had the opportunity to review the facts

15  set forth on pages 9 through 16 of the document?

16          MS. KOCH:  Yes, Your Honor.

17          THE COURT:  Do you need any more time to go

18  through those facts right now?

19          MS. KOCH:  No, I don't, Your Honor.

20          THE COURT:  Do you agree that those facts are

21  true?

22          MS. KOCH:  Yes, I do, Your Honor.

23          THE COURT:  Is there any inaccuracy with regard to

24  those facts that you would like to correct at this time?

25          MS. KOCH:  No, Your Honor.

1             THE COURT:  Are you pleading guilty because you

2    did the things set forth in that entire factual basis?

3             MS. KOCH:  Yes, Your Honor.

4             THE COURT:  Are you pleading guilty because you

5    are guilty?

6             MS. KOCH:  Yes, Your Honor.

7             THE COURT:  What I need you to do is in your own

8    words, ma'am, tell me what it is that you did that makes you

9    guilty of those facts.  You can stay seated.  It's actually

10   better because we're taping our proceedings.

11            MS. KOCH:  Okay.

12            THE COURT:  That way I know that a full record is

13   being made of this.

14            MS. KOCH:  Your Honor, I worked for my daughter at

15   Sunset Mesa Funeral Directors and Donor Services for several

16   years.  I take full responsibility for my actions.  The

17   specifics of what I did are in the written plea agreement I

18   signed, that is why I am pleading guilty to mail fraud.

19            Thank you for your time and your consideration.

20            THE COURT:  Mr. Chaffin?

21            MR. CHAFFIN:  Your Honor, I think that we laid out

22   a detailed statement of facts.  I'm satisfied with that

23   statement in which she specifically acknowledges all of those

24   facts that have been detailed in the plea agreement.

25            THE COURT:  All right.  I'll make further findings

1   on it later, but Ms. Koch has not in any way sought to

2   distance herself from any of those facts.  In fact, she said

3   that she did all of those things and has been given the

4   opportunity to correct any inaccuracy and has not availed

5   herself in any way of that, so the plea agreement and the

6   facts speak for themselves.  The government is satisfied with

7   that factual basis, so we'll move on.

8               Let's talk about some signatures in the documents.

9               Ms. Koch, on Page 20 of the plea agreement, there

10  are the state -- the signatures of counsel.  Above your typed

11  name is a signature, on Page 20 of the plea agreement, and

12  then again on Page 8 of the statement by defendant in

13  advance.  Are those both your signatures, ma'am?

14              MS. KOCH:  Yes, sir.

15              THE COURT:  When you signed those documents, did

16  you do so voluntarily?

17              MS. KOCH:  Yes, I did, Your Honor.

18              THE COURT:  Was your attorney or were your

19  attorneys with you when you signed those documents?

20              MS. KOCH:  Yes, Your Honor.

21              THE COURT:  Did they answer any questions that you

22  had about either of those documents before you signed them?

23              MS. KOCH:  Yes, Your Honor.

24              THE COURT:  All right.  Ms. Eskesen, with regard

25  to these documents bearing your signatures, did you review

1   each of them with your client?

2          MS. ESKESEN:  Your Honor, yes, I did.  I was

3   personally present with her when she signed both of them.

4   Mr. Goodreid was not personally present, but he was involved

5   on the telephone.

6          THE COURT:  Okay.  And did you review each of

7   these with your client?

8          MS. ESKESEN:  Yes, I did.

9          THE COURT:  Did you answer any questions she had

10  about them?

11         MS. ESKESEN:  I believe I did, yes.

12         THE COURT:  Do you believe that she fully

13  understands the contents of Exhibits 1 and 2?

14         MS. ESKESEN:  Yes, I believe she does.

15         THE COURT:  All right.  Thank you very much.

16         Ms. Koch, much of this is going to sound familiar

17  because it's in Exhibit 2 in detail, but I need to go back

18  through with you a number of rights that you have.

19         When you enter into a guilty plea, as I understand

20  you may want to do here, you're giving up a number of

21  constitutional rights.  You have and have exercised the right

22  to plead not guilty to any offense charged against you.

23  Because you have entered a not guilty plea, you have the

24  right to maintain that not guilty plea and to go to a speedy

25  and public trial.  You have the right to a trial to a jury of

1    12 individuals whose verdict must be unanimous.  At trial you

2    would be, as you are through all of these proceedings,

3    presumed innocent, and the government has the burden of

4    proving any charge or charges beyond a reasonable doubt.

5             If both you and the government were to give up the

6    right to a jury trial, you could be tried by the court, that

7    means to a district judge.  You have the right to competent

8    and effective assistance of an attorney or attorneys for your

9    defense through all of these proceedings, even if you were

10   not to enter into a guilty plea.  By that what I mean is if

11   you decide you don't want to do this and you decide you want

12   to go to trial, your attorneys remain with you for that

13   proceeding.

14            If you cannot afford an attorney, one would be

15   appointed to represent you free of charge, as has been done

16   at this -- in this case, and that lawyer or those lawyers

17   would assist you at trial and all stages of these criminal

18   proceedings.

19            At trial you have the right, with the assistance

20   of your attorney, to confront and cross examine witnesses and

21   to challenge any and all evidence presented against you.  At

22   trial you could have witnesses subpoenaed and compelled to

23   come to court to testify on your behalf.  If you couldn't

24   afford those subpoenas, I would order those issued free of

25   charge to you.

1          At trial you could testify on your own behalf, but

2  you also have the right against self-incrimination, so if you

3  chose not to testify or make any statement that would not

4  incriminate you in any way, and at your request the jury

5  would be instructed that they could not consider your silence

6  in any fashion.

7          Of course, by pleading guilty you are in fact

8  incriminating yourself and giving up that right.  If you went

9  to trial and were convicted, you'd have the right to appeal

10 your conviction.  Here, even though you're pleading guilty,

11 you have some appellate rights left, but many of those have

12 been waived in the plea agreement.

13         Ma'am, has your attorney advised you of all of

14 those rights?

15         MS. KOCH:  Yes, they have.  Thank you, sir.

16         THE COURT:  Sure.  Do you think you understand

17 those rights?

18         MS. KOCH:  I do, Your Honor.

19         THE COURT:  Do you understand that by entering

20 into this plea agreement you're giving up the right to appeal

21 the prosecution, conviction, and sentence under the

22 circumstance outlined in your plea agreement?

23         MS. KOCH:  Yes, Your Honor, I do.

24         THE COURT:  Do you understand, and probably more

25 importantly, that if your plea is accepted you will be

 1  incriminating yourself and will have given up, now and

 2  forever, the right to a jury trial and most of the rights

 3  that I just described that go along with that jury trial

 4  right?

 5          MS. KOCH:  Yes, I understand, sir.

 6          THE COURT:  Would you like any more time to speak

 7  with your attorneys about those rights before I ask you if

 8  you waive them?

 9      (Brief pause)

10          MR. GOODREID:  I'm sorry, Your Honor, I asked her

11  to pause for a moment --

12          THE COURT:  Sure.

13          MR. GOODREID:  -- because someone else was

14  (unintelligible) in the courtroom.

15          THE COURT:  Okay.  I think somebody was leaving,

16  but --

17          So do you want any more time to speak with your

18  attorney about your rights or your waiver of them?

19          MS. KOCH:  No, Your Honor.

20          THE COURT:  Do you, in fact, give up those rights?

21          MS. KOCH:  Yes, I do.

22          THE COURT:  Ms. Eskesen, are you satisfied that

23  each of the waivers of those rights by your client is

24  knowing, voluntary, and intelligence?

25          MS. ESKESEN:  Yes, Your Honor.

1        THE COURT:  And do you concur in those waivers?

2        MS. ESKESEN:  Yes, I do.

3        THE COURT:  Thank you.

4        Ms. Koch, I want to make sure that you understand,

5   as I think I've told you, that you're not giving up your

6   right to an attorney, nor to some limited appellate rights

7   that you have maintained.

8        All right.  Let's talk about the charge that you

9   intend to plead guilty to.  Mr. Chaffin, could you please

10  inform the defendant of the charge and the elements?

11       MR. CHAFFIN:  Yes, Your Honor.

12       The charge is mail fraud in violation of Title 18

13  United States Code Section 1341.  The elements of that

14  offense are as follows:

15       First, the defendant devised or intended to devise

16  a scheme to defraud as alleged in the indictment;

17       Second, the defendant acted with specific intent

18  to defraud;

19       Third, the defendant mailed something or caused

20  another person to mail something through a private or

21  commercial interstate carrier for the purpose of carrying out

22  the scheme;

23       Fourth, the scheme employed false or fraudulent

24  pretenses, representations, or promises that were material.

25       THE COURT:  Thank you, Mr. Chaffin.

1                Ms. Koch, do you believe that you understand the

2    nature of this charge against you?

3                MS. KOCH:  Yes, I do, Your Honor.

4                THE COURT:  Do you understand that if this matter

5    went to trial the government would have the burden of proving

6    each and every one of those elements beyond a reasonable

7    doubt?

8                MS. KOCH:  Yes, I do, Your Honor.

9                THE COURT:  All right.  Let's next talk about the

10   penalties.  Could you go through those, please?

11               MR. CHAFFIN:  Yes, Your Honor.

12               The maximum statutory penalty for a violation of

13   Title 18 United States Code Section 1341 is not more than 20

14   years of imprisonment, not more than a $250,000 fine, or

15   both, not more than a than three years supervised release, a

16   $100 special assessment fee, and restitution in an amount to

17   be determined by the court at sentencing.

18               THE COURT:  Thank you very much.

19               Do you believe that you understand each and every

20   one of these penalties and possible consequences against you,

21   Ms. Koch?

22               MS. KOCH:  Yes, I do, Your Honor.

23               THE COURT:  All right.  As I've already discussed,

24   there is an estimated sentencing range in this matter.  That

25   is set forth again in Section G, on Page 18, and the parties

1  estimate that the sentence based off of the current

2  calculations is 63 to 78 months.

3          Ms. Eskesen, is that the sentencing range that you

4  believe applies, at least based off of the calculations?

5          MS. ESKESEN:  It is, Your Honor, based on the

6  calculations as set forth in the document.

7          THE COURT:  And have you explained to your client

8  the computation provisions and possible calculations in the

9  plea agreement?

10          MS. ESKESEN:  Yes, Your Honor, I have.

11          THE COURT:  Have you told her anything different

12  about it than what is set forth in there?

13          MS. ESKESEN:  No, I have not.

14          THE COURT:  All right.

15          So Ms. Koch, it's important that you know that

16  this is only an estimate based off of the information that we

17  have at this time.  It is certainly possible, and sometimes

18  the pre-sentence investigation report contains information

19  that would change that calculation in some fashion.

20          In addition, in determining your sentence the

21  court that is sentencing you is obliged by law to impose a

22  sentence sufficient but not greater than necessary to promote

23  respect for the law and provide just punishment, to

24  adequately deter criminal conduct, to protect the public from

25  further crimes that you might commit, to provide you with

1   needed educational or vocational training, medical care, or

2   other correctional treatment in a most effective manner.

3              In order to fashion that sort of sentence the

4   Court will consider the nature and circumstances of the

5   offense, your history and characteristics, the type of

6   sentences that might be available, what the federal

7   sentencing guidelines would recommend, the need to avoid

8   unwarranted sentence disparities among defendants with

9   similar records found guilty of similar conduct, and any need

10  for restitution.

11             Has your attorney explained to you the various

12  elements and factors that the sentencing court will consider

13  in determining your sentence?

14             MS. KOCH:  Yes, Your Honor.

15             THE COURT:  Do you think you understand those

16  factors and elements?

17             MS. KOCH:  Yes, I do, Your Honor.

18             THE COURT:  Has your attorney explained to you

19  that the federal sentencing guidelines are merely advisory

20  upon the Court?

21             MS. KOCH:  Yes, Your Honor.

22             THE COURT:  What that means, probably most

23  importantly, is that the determination of the sentence to be

24  imposed is 100 percent up to the Court and is not bound by

25  those guidelines.

1          MS. KOCH:  Yes, Your Honor, I do.

2          THE COURT:  In legal terms that means that the

3    Court does not have to accept any sentence recommended by the

4    plea agreement or by the counsel, or it can accept it in part

5    and reject it in part, and that would not entitle you to

6    withdraw from your plea at the time of sentencing.  Do you

7    understand that?

8          MS. KOCH:  Yes, I do, Your Honor.

9          THE COURT:  And let me separate things out just a

10   little bit, because it's addressed in the appellate waiver.

11   Certain sentences might allow you to come back and appeal if

12   it's over a certain level, but that's very different from

13   being able to withdraw from your plea.  So you're stuck with

14   your plea if you go through it, whether you like the sentence

15   or not, and you don't get to withdraw from it at a later

16   point in time.  You might be able to appeal it if it meets

17   the qualifications there, but you don't get to withdraw from

18   it.  Do you understand that?

19         MS. KOCH:  Yes, I do, Your Honor.

20         THE COURT:  Do you understand that the sentence

21   imposed may be more severe or less severe than is set forth

22   in the sentencing guidelines?

23         MS. KOCH:  I understand, Your Honor.

24         THE COURT:  If you are sent to prison, when you

25   are released there would be conditions attached to your

1   release.  Some of those conditions would be no new crimes at

2   the state, federal, or local level, no illegal substances,

3   and no firearms.  There may be special conditions unique to

4   your circumstances.  One obvious one would be that you don't

5   get to engage in the type of business that you have been

6   engaged in the past.  And if you were to violate one or more

7   of the conditions of supervised release you could be returned

8   to prison for some portion or all of the remaining term of

9   supervised release.  Do you understand that?

10          MS. KOCH:  Yes, I do, Your Honor.

11          THE COURT:  Ms. Eskesen, is your client a United

12  States citizen?

13          MS. ESKESEN:  Yes, she is, Your Honor.

14          THE COURT:  Okay.

15          Ms. Koch, if you are currently on parole,

16  probation, or supervised release for anything else, this plea

17  could revoke that status and send you to prison for some

18  other case.  Also, the charge you're pleading guilty to is a

19  felony offense, because of that it can or will deprive you of

20  some rights.  It will deprive you of the right to possess a

21  firearm of any kind.  Depending on circumstances, it could

22  deprive you of the right to vote, to hold public office, or

23  to serve on a jury.  Do you understand that?

24          MS. KOCH:  Yes, I do, Your Honor.

25          THE COURT:  Also, parole has been abolished in the

1  federal system.  If you are sent to prison, you will not be

2  released early.  The only ways that you can reduce the

3  sentence or our motion of the government shortly after the

4  judgment is entered, by a successful appeal and resentencing,

5  or by the application of up to 54 days a year of good time by

6  the Bureau of Prisons.

7          Ma'am, has anyone, including your attorneys, made

8  any promises, representations, or guarantees to you of any

9  case about the sentence that the Court might impose to get

10  you to plead guilty?

11          MS. KOCH:  No, Your Honor.

12          THE COURT:  Has anyone tried to force you to plead

13  guilty?

14          MS. KOCH:  No, Your Honor.

15          THE COURT:  Has anyone threatened you, your

16  family, or anyone close to you to get you to plead guilty?

17          MS. KOCH:  No, Your Honor.

18          THE COURT:  Ms. Eskesen, and this applies of

19  course to co-counsel, have you all reviewed all of the facts

20  and discovery in this matter provided by the government?

21          MS. ESKESEN:  Yes.  We have, Your Honor.

22          THE COURT:  Have you reviewed those facts and

23  discovery with your client?

24          MS. ESKESEN:  Yes, we have.

25          THE COURT:  Have you reviewed any or pursued any

1    defenses that she might have?

2              MS. ESKESEN:  Yes, we have.

3              THE COURT:  Have you advised her about the

4    legality or admissibility of any statements or confessions or

5    other evidence the government might have against her?

6              MS. ESKESEN:  We have.

7              THE COURT:  To the best of your knowledge, is your

8    client pleading guilty because of any illegally obtained

9    evidence in the possession of the government?

10             MS. ESKESEN:  Not to my knowledge.

11             THE COURT:  Do you and your client agree that it

12   is in her best interest to enter into this plea?

13             MS. ESKESEN:  Yes, we do.

14             THE COURT:  Do you believe she's entering this

15   plea freely and voluntarily with full knowledge of the charge

16   and consequences of the plea?

17             MS. ESKESEN:  Yes.

18             THE COURT:  Other than as set forth in the plea

19   agreement, have there been any promises, representations, or

20   guarantees made, either to you or to your client?

21             MS. ESKESEN:  No, Your Honor, there have not.

22             THE COURT:  Other than a general discussion of the

23   sentencing guidelines and factors and elements a court might

24   consider, has there been any promise or indication of a

25   specific sentence the sentencing court might impose?

1          MS. ESKESEN:  No, there has not.

2          THE COURT:  Do you know of any reason why I should

3    not recommend acceptance of your client's plea of guilty?

4          MS. ESKESEN:  I do not.

5          THE COURT:  Do you concur in the waiver of a jury

6    trial and entry of a plea?

7          MS. ESKESEN:  Yes, we do.

8          THE COURT:  Thank you.

9          Mr. Chaffin, other than as set forth in the plea

10   agreement, has the government made any promises,

11   representations, or guarantees to the defendant or her

12   attorney?

13         MR. CHAFFIN:  No, Your Honor.

14         THE COURT:  Does the government consent to waiver

15   of a jury trial conditioned upon this matter being resolved

16   in accordance with this plea agreement?

17         MR. CHAFFIN:  Yes, Your Honor.

18         THE COURT:  Okay.  Let me turn back, Ms. Koch, and

19   ask you some questions about your representation.

20         Are you satisfied with the representation your

21   attorneys have provided to you?

22         MS. KOCH:  Yes, I am, Your Honor.

23         THE COURT:  Have you told them everything they

24   need to know about your case?

25         MS. KOCH:  Yes, I have, Your Honor.

1            THE COURT:  Do you believe that they have fully

2   considered any defenses you might have to the charges?

3            MS. KOCH:  Yes, I do believe.

4            THE COURT:  Do you believe that they have fully

5   advised you about the case?

6            MS. KOCH:  Yes, I do.

7            THE COURT:  Have you told them everything that

8   they need to know about your case?

9            MS. KOCH:  Yes, I have.

10            THE COURT:  Have you had enough time to discuss

11   your case with your attorneys?

12            MS. KOCH:  Yes, I have.

13            THE COURT:  Much of your case has occurred during

14   the coronavirus pandemic when communications have had to be

15   electronic, video, phone, things of that nature, has that

16   interrupted things to the point that you have not been able

17   to understand anything about your case?

18            MS. KOCH:  No, Your Honor.

19            THE COURT:  Have you understood everything I've

20   told you and asked you about your case today?

21            MS. KOCH:  Yes, I do, Your Honor.

22            THE COURT:  Do you believe that you understand the

23   consequences to you of this plea of guilty?

24            MS. KOCH:  Yes, I do, Your Honor.

25            THE COURT:  Do you believe that you're competent

1   to make the decision to plead guilty?

2              MS. KOCH:  Yes, I am, Your Honor.

3              THE COURT:  Do you know of any reason why I should

4   not recommend acceptance of your guilty plea?

5              MS. KOCH:  No, I don't, Your Honor.

6              THE COURT:  Do you understand that if I do that,

7   that at the end of all of this that really all that's left is

8   imposition of sentence, which almost insert -- almost

9   certainly will include imprisonment under the federal

10  sentencing guidelines?

11             MS. KOCH:  I understand.

12             THE COURT:  Having in mind everything we've

13  discussed about your plea of guilty, the rights that you

14  would be giving up, the maximum sentence, do you still want

15  to plead guilty?

16             MS. KOCH:  Yes, I do, Your Honor.

17             THE COURT:  Are you accept -- are you requesting

18  that I receive, accept, and approve your plea agreement as

19  set forth in Exhibit 1?

20             MS. KOCH:  Yes, I do, Your Honor.  Thank you.

21             THE COURT:  Ms. Eskesen, is there any reason from

22  your perspective that I should not recommend acceptance of

23  the plea of guilty?

24             MS. ESKESEN:  None of which we're aware, Your

25  Honor.

1          THE COURT:  All right.  And other than

2   rearraignment, do you think I've complied with Rule 11?

3          MS. ESKESEN:  I do, Your Honor.

4          THE COURT:  Okay.

5          Mr. Chaffin, same questions for you, sir.

6          MR. CHAFFIN:  Your Honor, the government knows of

7   no reason the Court should not accept the plea agreement, and

8   the government concurs that the Court has complied with Rule

9   11.

10          THE COURT:  Okay.  Could you please do a final

11   arraignment?

12          MR. CHAFFIN:  Yes, Your Honor.

13          Ms. Koch, the elements of mail fraud in violation

14   of Title 18 United States Code Section 1341 are as follows:

15          First, the defendant devised or intended to devise

16   a scheme to defraud as alleged in the indictment;

17          Second, the defendant acted with specific intent

18   to defraud;

19          Third, the defendant mailed something or caused

20   another person to mail something through a private or

21   commercial interstate carrier for the purpose of carrying out

22   the scheme;

23          And fourth, the scheme employed false or

24   fraudulent pretenses, representations, or promises that were

25   material.

1           THE COURT:  Thank you, Mr. Chaffin.

2           Ms. Koch, then I will formally ask you with regard

3    to Count 3, mail fraud and aiding and abetting in violation

4    of 18 United States Code 1341 and 18 United States Code 2, a

5    felony, how do you plead; guilty or not guilty?

6           MS. KOCH:  I plead guilty, Your Honor.

7           THE COURT:  All right.  Then I need to make

8    certain findings for the record.

9           In the matter of the United States of America

10   versus Shirley Koch, 20-cr-98, I find that having questioned

11   Ms. Koch and her attorney on the offer of her plea of guilty

12   to Count 3 of the indictment, a felony, the defendant and her

13   attorney having advised the Court that they have conferred

14   concerning the offered plea of guilty in all aspects of the

15   charges against the defendant and any defenses she might

16   have, the Court having observed the defendant's intelligence,

17   demeanor, and attitude while answering questions in this

18   hearing, and the Court having observed the defendant does not

19   appear to be under the influence of any medicine, drug, or

20   other substance or factor that might affect her actions or

21   judgment in this matter, the Court finds as follows:

22          The defendant is fully competent and capable of

23   entering an informed plea;

24          The defendant is aware of the nature of the charge

25   and charges she was charged with and consequences of her

1  plea;

2          The defendant has thoroughly discussed her plea

3  agreement with her attorney;

4          The defendant has been represented throughout the

5  course of this case and this hearing by competent and

6  effective counsel with whom she has no objection, criticism,

7  or complaint;

8          The defendant has read and understands each and

9  every term of the plea agreement;

10          The defendant has signed the plea agreement and

11  statement by the defendant;

12          The defendant has knowingly, voluntarily, and

13  intelligently entered a plea of guilty to Count 3, mail fraud

14  and aiding and abetting, and has a full understanding of each

15  of the nature and the circumstances and factual basis and

16  essential elements of that charge;

17          The defendant's plea of guilty is not the result

18  of mistake, misunderstanding, fear, coercion, or undue

19  influence;

20          The defendant's plea of guilty is not the result

21  of a promise or a representation made to her by anybody,

22  including his own attorney, or her own attorney, except as to

23  those matters discussed in the hearing or included in the

24  party's plea agreement;

25          The defendant understands each of her legal rights

Case 1:20-cr-00098-CMA-GPG   Document 243   Filed 09/07/22   USDC Colorado   Page 63 of 72

1   in this case, including her right to a jury trial, her right

2   to be represented during all stages of this proceeding, and

3   all proceedings in this matter by an attorney, including the

4   right to court appointed counsel of which she has availed

5   herself;

6           The defendant understands the maximum sentence of

7   20 years, the maximum fine, the special assessment, the

8   forfeiture, the restitution, the terms of supervised release

9   that the Court can and/or will impose;

10          The defendant understands the Court's not bound by

11  any sentence recommended in the plea agreement and further

12  understands that she will not be able to withdraw her plea of

13  guilty even if the Court does not follow the recommendation;

14          The defendant understands each and every essential

15  element of the offense to which he's plead guilty;

16          The plea is supported by an independent basis in

17  fact containing each of the essential elements.

18          It's therefore ordered that Exhibits 1 and 2 are

19  admitted and received.  I do recommend the plea be accepted.

20  As I indicated at the beginning of this hearing, when I went

21  through the plea agreement, that despite any recommendation

22  that might be made with regard to the sentencing guidelines,

23  it is only a recommendation.

24          This plea is an entirely open plea that does not

25  bind the Court in any way, so the court sentencing, Ms. Koch,

1   has available to it 20 years.  I'm not saying that the Court

2   will or won't impose that that is not in my power to

3   determine or divine, but that is available.  And for those

4   reasons, I do recommend that the plea be accepted and that

5   the defendant be adjudged guilty of mail fraud and aiding and

6   abetting Count 3, a felony.

7            The defendant is referred to the probation

8   department for a presentence report.

9            Do we know, Ms. Barnes, if they're there today?

10           THE COURT CLERK:  (Unintelligible).

11           THE COURT:  Okay.  We'll get you information, Ms.

12  Eskesen.  And you may have already started that process.

13           MS. ESKESEN:  Your Honor, I've started that

14  process.

15           THE COURT:  Okay.

16           MS. ESKESEN:  And my understanding from speaking

17  with the supervisor in Denver is that the reports will be

18  prepared by people out of the Denver office and they will

19  make contact with us.

20           THE COURT:  Okay.  Fantastic.

21           MS. ESKESEN:  Thank you.

22           THE COURT:  So, Ms. Koch, I'm going to make it a

23  condition of your supervised release, and I'll come back to

24  that here in a moment, with regard to that.  But you are

25  ordered as a condition of supervised -- I'm not supervised

1  release, pretrial release, if I continue those conditions,

2  which I'll discuss here momentarily, you are ordered that an

3  additional condition will be complying with the pre-sentence

4  report process.  You can talk to your attorney about how that

5  goes.  It's going to include interview or interviews and a

6  variety of other things, but you have to comply with that so

7  that the probation department can comply with Rule 32 and get

8  that report prepared.

9            Your sentencing hearing is not going to occur for

10  a number of months.  The probation officer will talk with you

11  and gather information to include in that report.

12            Please don't be confused by the term "probation

13  officer," that has nothing to do with the sentence that might

14  be imposed.  That's just the person who is tasked with

15  creating that report in this case.  The court sentencing you

16  will not see that report until after this is done, or after

17  it's done and you, through your attorney, either personally

18  or with them, will have the opportunity to make sure that it

19  is accurate.  If you have any objections to that report let

20  your attorney know and they will know how to address those

21  objections.

22            In addition, prior to sentencing, the attorneys

23  may file motions and provide the Court with other information

24  that they believe the Court should consider at the time of

25  sentencing.  At sentencing the Court will hear statements

1  from the attorneys, from the government, from you.

2  Individuals who wish to say something on your behalf will not

3  be able to at sentencing, but they may write a letter to the

4  probation department that will be attached to the report and

5  read by the Court.  Mr. Chaffin will coordinate with the

6  Court with regard to victim statements and sentencing.

7           And I know we're going to talk about the length of

8  sentencing here in a moment.  I'll come back momentarily to

9  setting a sentencing hearing.  You have to appear for that

10 hearing.

11          Mr. Chaffin, does the government have any

12 information or anything further with regard to pretrial

13 release, particularly any violations, that I need to consider

14 with regard to that?

15          MR. CHAFFIN:  No.  Ms. Koch has been fully

16 compliant with all conditions of her pretrial release that I

17 am aware of.  The government is not requesting that she be

18 remanded today.

19          THE COURT:  All right.  And just so I can clearly

20 address that, because I understand that there was a request

21 for confinement made by Ms. Henning, the law clearly says

22 that I have to find conditions or combinations of conditions

23 if they exist, and that I have to consider the course of

24 someone's --

25          Somebody's not muted.  If we could have you mute?

1           THE COURT CLERK:  (Unintelligible).

2           THE COURT:  Okay.  I think some folks have gotten

3   on for our next hearing.  Go ahead, please, and mute your

4   feed, if you could.

5           With regard to that, I must find conditions and I

6   must take into account the compliance, or lack of compliance,

7   over the course of the case.  Here, given the compliance over

8   that course of time, I don't have a legal basis for revoking

9   that pretrial release and will not do so.  I do add, as I

10  indicated, the conditions, Ms. Koch, that you have to comply

11  with the pre-sentence report process and you have to show up

12  for the sentencing date that I'm going to discuss here in a

13  moment.

14          The only motion that I saw in review was document

15  220.  That motion, Ms. Barnes, is now denied as moot.

16          All parties will file sentencing positions, motion

17  for departure, or variant sentencing, or motions to decrease

18  or dismiss counts at least 14 days before sentencing,

19  response and objections seven days out.  Failing to timely

20  file could result in a continuance.  Failing to respond will

21  be construed as a concession.

22          All parties may object in writing to my findings

23  and recommendations within 14 days pursuant to Rule 59(b)(2).

24          I appreciate the Marshals and CSOs for our extra

25  security today.

1           With regard to sentencing, are we looking at a

2    full day, Mr. Chaffin?

3           MR. CHAFFIN:  Your Honor, I don't think that a

4    full day will be necessary for Ms. Koch's sentencing.  There

5    is nothing that is in dispute in terms of evidence or

6    presentation of evidence.  There will be a number of victims

7    that would like to address the Court, so I would ask the

8    Court to set the sentencing for at least two hours.  It may

9    be a good idea to set it for longer, but I think a minimum of

10   two hours is probably necessary to allow the victims to

11   address the Court.

12          I would -- I would recommend that the Court set

13   the sentencing for the November term.  I think that's Judge

14   Arguello's next sentencing term.

15          THE COURT:  Okay.

16          Ms. Eskesen, any reason not to set it for that

17   time period?

18          MS. ESKESEN:  Your Honor, that's our understanding

19   as well, that November is the next term.  And assuming that

20   probation can get done what they need to do, and we can meet

21   all the deadlines, that seems reasonable.

22          THE COURT:  Okay.

23          MS. ESKESEN:  And I concur with (unintelligible)

24   Chaffin that two hours is (unintelligible).

25          THE COURT:  All right.  Ms. Barnes, is that

1    November 7th?

2            THE COURT CLERK:  Yes.

3            THE COURT:  Okay.  So what I'm going to do is give

4    you a date, Ms. Koch, and this is important because there's a

5    lot of folks here who want to be present, and that is

6    perfectly fine, I'm going to give you a date of November the

7    7th at nine o'clock in the morning.  And we'll indicate in

8    the record for Judge Arguello that the parties are requesting

9    a two-hour sentencing block.

10           But Ms. Koch, that may very well not be your

11   actual sentencing time.  It's incumbent upon you to continue

12   to keep in contact with your attorneys because they're going

13   to be the ones who get the electronic notification of when

14   your sentencing date is, and we'll let you know when you need

15   to be in court, because you got to be here for your

16   sentencing date, as they tell you.  But we're setting a lot

17   of things that week, I don't know how Judge Arguello is going

18   to parse them out over the course of the week.  That's not

19   something I get to decide, but just make sure you keep in

20   touch with Ms. Eskesen.  Mr. Chaffin will be in the position

21   of letting victims know so that they are also in the same

22   position that everybody can be here when they need to be

23   here.

24           All right.  Let me ask, Ms. Eskesen, anything else

25   on behalf of your client that you think we need to address?

1          MS. ESKESEN:  No, Your Honor, not at this time.

2          THE COURT:  Mr. Chaffin, how about from the

3   government's perspective?

4          MR. CHAFFIN:  I'm not on this case, Your Honor.  I

5   was going to inquire about the next hearing, about how long

6   the Court anticipates --

7          THE COURT:  It's a long one, so I think I'm more

8   inclined -- so, well, let me come back to that momentarily.

9          So, Ms. Eskesen, if you and your client and co-

10   counsel want to depart out the door to my right at this point

11   in time, I'll ask everybody else to just stay put for a

12   minute or two so that everybody gets to leave when they need

13   to, and then I'll address that, Mr. Chaffin, here

14   momentarily.  We're about to start about an hour and a half

15   pre-trial conference, so --

16          MR. CHAFFIN:  (Unintelligible).

17          THE COURT:  All right.  So Mr. Chaffin, I think

18   we're talking about warrants from this morning.  I think we

19   can probably run through those in about two minutes.  I think

20   it probably takes more of your time to have you leave and

21   come back, so I'm inclined to just do that quickly if you're

22   okay with that.

23          MR. CHAFFIN:  I'm happy to do so.  Your Honor, is

24   it all right if we use the jury assembly room for me --

25          THE COURT:  You sure can.

1          MR. CHAFFIN:  -- to confer with the victims?

2          THE COURT:  Yeah.  You sure can.

3          And for the folks on our civil matter, I'm going

4   to spend about two minutes going through warrants with the

5   government on unrelated cases, and then I'm going to take

6   about a five-minute break, so we'll start the pretrial

7   conference in Carter versus Monger (phonetic) at about 3:10.

8   You all can certainly stay on the line, but you don't have

9   to.  And if you want to pop back in in eight minutes or so,

10  that's just fine, so.

11          MR. CHAFFIN:  Your Honor, can I have just about 30

12  seconds to explain to the victims where they can wait?

13          THE COURT:  Absolutely.

14          MR. CHAFFIN:  Thank you.

15                  (Time noted:  3:02 p.m.)

16                      *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                           CERTIFICATE

2          I, RANDEL RAISON, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter, to

5    the best of my ability.

6

7

8    _____          September 7, 2022

9    Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25